Concrete Products Co. *v.* United States Fidelity & Guaranty Co., Appellant.

Argued December 2, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Alfred G. Muench,* with him *Pepper, Bodine, Stokes & Schoch,* for appellant.—In the absence of a legislative enactment authorizing recovery, a person furnishing labor or material for public works cannot recover on a bond conditioned on the payment of labor and materials furnished unless such person is a party to the bond: Somerset Boro. v. Barber, 103 Pa. Superior Ct. 20; McCarthy v. Bridgeport, 299 Pa. 305; Patterson v. New Eagle, 294 Pa. 401.

That plaintiff cannot recover as a third party beneficiary is clearly settled by Greene Co. v. Surety Co., 292 Pa. 304.

Plaintiff is not a party to the bond: Greene Co. v. Surety Co., 292 Pa. 304; Somerset Boro. v. Barber, 103 Pa. Superior Ct. 20.

*Edwin A. Lucas,* with him *Drinker, Biddle & Reath,* for appellee.—If the terms of the bond itself clearly accord to a materialman enforceable rights, then a right

to sue thereon is independent of any enabling statute: Portland Sand, etc., Co. v. Indemnity Co., 301 Pa. 132; Robertson Co. v. Indemnity Co., 77 Pa. Superior Ct. 422; Mock v. Bechtel, 101 Pa. Superior Ct. 181.

Under the present bond, a materialman, as the only party beneficially interested in the materialman covenant, is entitled to recover: Eastern School Dist. v. Casualty Co., 304 Pa. 67; Blymire v. Boistle, 6 Watts 182.

OPINION BY MR. JUSTICE MAXEY, January 3, 1933:

The plaintiff, Concrete Products Company of America, hereinafter referred to as the "Products Company," is a Pennsylvania corporation. The defendant, United States Fidelity & Guaranty Company, hereinafter referred to as "the Guaranty Company," is a Maryland corporation, registered in Pennsylvania.

On December 3, 1929, the Borough of West Reading, Pennsylvania, hereinafter referred to as the Borough, as party of the first part, and John D. Maurer and Dominic A. Maurer, Jr., trading as Dominic Maurer & Sons, party of the second part, entered into a written agreement for the construction of certain storm sewers on Second Avenue and Franklin Street and also on Seventh Avenue in West Reading. To meet the requirements under this agreement Dominic Maurer & Sons placed with the Products Company two orders for machine-made cement concrete pipe and machine-made reinforced concrete lap joint pipe. On December 4, 1929, the Guaranty Company gave the Borough its bond in the penal sum of $28,-733.75. This bond was executed by John D. Maurer and Dominic A. Maurer, Jr., trading as Dominic Maurer & Sons, as principals, and the United States Fidelity & Guaranty Company, as surety, and contained the following provision: "The condition of the above obligation is such that whereas the above named principal did on the 3d day of December, 1929, enter into a contract with the

Borough of West Reading, which said contract is made a part of this bond the same as though set forth herein.

"Now, if the said John D. Maurer and Dominic A. Maurer, Jr., trading as Dominic Maurer & Sons, shall well and faithfully do and perform the things agreed by them to be done and performed according to the terms of said contract, relative to the construction of a storm sewer on Seventh Avenue, and also a storm sewer on Second Avenue and Franklin Street in the Borough of West Reading, Penna., and shall pay all lawful claims of subcontractors, materialmen and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract, we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein; then this obligation shall be void; otherwise the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated."

After the execution of the contract and the posting of the bond, Dominic Maurer & Sons advised the Products Company of this and instructed them to start delivery immediately under the purchase orders. The company did so, with knowledge of the terms of the surety bond and in reliance thereon. All of the pipes delivered by the Products Company were used in the construction of the storm sewers provided for in the contract of December 3, 1929. The Products Company received payments for some of this pipe, but there was a balance still due the plaintiff of $10,270.98. The two storm sewers have been completed and the work has been accepted and paid for by the Borough. At the time the Borough made final payments on this contract, it had no claim against either the contractor or any subcontractors, laborers or materialmen in connection with any of the work. Except for plaintiff's claim now in suit, there are only a few other

small claims of unpaid materialmen. The Products Company has never been paid the balance due it by Dominic Maurer & Sons, for the latter became involved in financial difficulties. Neither has the surety company paid the amount claimed by plaintiff. Hence this suit on the bond.

The question before us is whether or not in the absence of a statute or ordinance authorizing suit by this plaintiff on this bond, the Products Company which furnished the material can recover in this action.

Appellant argues that this case is ruled by Greene Co., for use, v. Southern Surety Co., 292 Pa. 304, 141 A. 27. It contends that plaintiff has the status only of a third party beneficiary and, under the authority of the case just cited, recovery by it is barred. The provisions of the bond in that case which are pertinent here are these: "That we, Saml. Gamble Company......'Principal,' and Southern Surety Co.......called the 'Surety,' are......bound unto the County of Greene in the sum of......to be paid to the said County...... Whereas, the......'Principal' has entered into a contract with the......County......for the improvement of a highway,...... Now,......the condition of this obligation is......that......the......'Principal',.....shall save harmless the County of Greene from......any liability for payment of wages due or materials furnished...... and shall well and truly pay for all material furnished ......[for] the......highway."

In the case at hand the following clause in the bond should be noted: "We agreeing and assenting that this undertaking [that is, the payment of materialmen and laborers] shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein."

In the Greene County Case, supra, this court held (page 316): "Where the contract is for the benefit of the promisee, or, in other words, where the third person is a creditor beneficiary, there can be no recovery. In

the case of a donee beneficiary, or where the contract is made for the sole benefit of a third person, there may be recovery only where the consideration for the promise is a transfer of property or money to the promissor, or where unusual circumstances are present."

It is obvious from the language of the bond now before us for interpretation that the contract was not made for the benefit of the promisee (the Borough) alone. Neither was the contract "made for the *sole* benefit of a third person" (materialmen). The contract was made *both* for the benefit of the Borough (the obligee), *and* "for the benefit of any materialman or laborer having a just claim, as well as for the obligee." The bond gave the plaintiffs in this suit the status not of mere creditor beneficiaries but of direct promisees. This court in the Greene County Case, supra, expressly approved of the decision of the Superior Court in Robertson Co. v. Globe Indemnity Co., 77 Pa. Superior Ct. 422, saying that "the bond before the Superior Court was in the name of the Commonwealth for the use of Washington County, or any other person interested. There were no omitted links connecting ultimate liability." In the case now before us it is even clearer that there are no "omitted links." The bond here was expressly executed for the benefit of materialmen and laborers "having a just claim." The bond of the Globe Indemnity Company in the Robertson Company Case was furnished pursuant to section 12 of the County Road Act of May 11, 1911, P. L. 244 (though the language of the condition of the bond follows in respect to materialmen and laborers the terminology of section 13 of the State Highways Act of May 31, 1911, P. L. 468, which fact is, however, immaterial). Section 12 of the County Road Act merely lays down the following requirement as to the bond: "...... No contract shall be awarded for any of said public work until proper bonds shall be given for the faithful performance thereof by the person or persons to whom the same shall be awarded, with proper security, to be ap-

proved by said commissioners, or a majority of them."

It will be noticed that the County Road Act of May 11, 1911, does not confer upon unpaid materialmen or laborers any right to maintain suit on the contractor's bond, in the name of the obligee to their own use (as is now conferred by eight different acts passed in 1931 relating to highways and other public works constructed for the state department of highways, counties, cities, boroughs, unincorporated towns, townships, poor districts and school districts, these acts being indexed under "public works," 1931, P. L. 1621). The fact that there was no statute giving materialmen or laborers the right to sue on the bond filed in the Robertson Company Case was held by the Superior Court not to bar recovery in that case and the court there held that by the terms of the bond, "those furnishing labor and materials used in the work are made parties to the bond; for the obligee in the bond is the Commonwealth of Pennsylvania, for the use of the County of Washington *and any other corporation or person interested,* and therefore the bond is not for the sole protection of the County of Washington, but also inures to the benefit of any corporation or person furnishing labor or materials in and about the construction of the roadway, which he may do relying on the condition of the bond providing for their payment." In the case now before us the terms of the bond much more explicitly indicate than did the terms of the bond in the Robertson Company Case that those furnishing labor and materials were "parties to the bond."

Moreover, the intention to make materialmen and laborers "parties to the bond" is further emphasized by the statement in the bond that "the liability of the surety for any and all claims thereunder shall not exceed the penal amount of the bond." If it was not intended to make the materialmen and laborers direct beneficiaries under the bond, the clause referred to would be without meaning, because the bond already expressly set forth the maximum liability to the municipality, but the surety

company goes further and, recognizing the fact that other parties are being accorded enforceable rights thereunder and the possibility that the total of their claims might exceed the penal sum of the bond, it states that it is expressly understood and agreed that it is "in no event" assuming liability "for any and all claims" exceeding the "penal amount of this obligation." This appears to be an acknowledgment of the surety company's obligation not only to the municipality, but also to any unpaid materialman having a just claim for materials furnished for the construction of the public works described.

In Portland Sand & Gravel Co. et al. v. Globe Indemnity Co., 301 Pa. 132, 151 A. 687, this court, in an opinion by Mr. Justice SADLER, quoted approvingly the following statement of this court in the case of Greene Co. v. Southern Surety Co., supra: "Where a bond is given for public work in pursuance of a statute or ordinance for the protection of laborers and materialmen, those who come within the protected class may sue the surety on the bond."

In Pittsburgh, to use, v. Commercial Casualty Ins. Co., 106 Pa. Superior Ct. 254, 161 A. 630, 631, the Superior Court in an opinion by Judge CUNNINGHAM said: "Appellant is correct in stating that such a bond need not necessarily be authorized by statute, but if a right of action is not so given, the subcontractors must be able to find their right to sue in the language of the instrument itself." In the case before us the right of the materialmen to sue is found without difficulty in the language of the instrument itself.

To sustain the judgment of the court below does not require any impingement upon the decision of this court in the Greene County Case, supra, but it is pertinent to note that a liberal interpretation of the rights of gift promisees in a contract is sanctioned by American juristic authority, as is evidenced by section 135 of the "Restatement of The Law of Contracts," adopted and pro-

mulgated by the American Law Institute on May 6, 1932, which reads as follows: "Except as stated in section 140 [which need not be quoted here], (a) a gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit; (b) a gift promise also creates a duty of the promisor to the promisee to render the promised performance to the donee beneficiary."

Section 136 of the same restatement reads as follows: "(1) Except as stated in sections 140, 143 [which need not be quoted here], (a) a promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise; (b) a promise to discharge the promisee's duty creates also a duty to the promisee......"

In an article on "Third Parties as Beneficiaries of Contractors' Surety Bonds" by Professor Arthur L. Corbin of Yale Law School, on page 667 of "Selected Readings on the Law of Contracts," published in 1931, that learned author says (page 668): "We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an 'exception.' 'Privity' is not necessary: the third party need not be a 'promisee,' nor need he give consideration. ...... The third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. ...... We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. ...... [page 669]. In the case of a surety bond for the payment of money, if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it. ...... [page 677]. The words used in building contracts and in accompanying

surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor. ...... In this class of cases it is sound policy to interpret the words liberally in favor of the third parties. ...... While this has not been done in the case of private construction, and while the courts should not on their own motion put such a provision into a private surety bond, they may well interpret a bond that is expressly conditioned on the payment of laborers and materialmen as being a promise to pay them and made for their benefit. The words reasonably permit it, and social policy approves it."

The judgment is affirmed.