## Greleck v. Amsterdam

*M. S. Kirk,* for plaintiff; *Samuel Kenin,* for defendant.

KNOWLES, J., April 7, 1934.—For some time prior to the date when this cause of action arose, plaintiff had been in the employ of defendant as a waitress. On or about August 10, 1933, defendant, being owner and operator of a restaurant, signed the "blanket code" prepared by the National Recovery Administration for employers of industry, under the terms of which defendant promised to the President of the United States that he would pay his employes a minimum wage of $15 a week. Thereafter, on August 17, 1933, this "blanket code" was modified, in accordance with a provision of the code signed by defendant, so that employers owning and operating restaurants were allowed to pay a minimum wage of $.28 an hour, instead of $15 a week, or approximately $.37½ an hour, under the "blanket code". The defendant did not sign this modification. Defendant, after signing the "blanket code" on August 10th, displayed a "blue eagle" emblem. He thereupon raised the wages of plaintiff, one of his employes, to the sum of $5 a week, which was less, however, than the minimum which was allowed by law, and which he agreed to pay in signing the "blanket code" on August 10th. Plaintiff continued to work for defendant for 16 weeks after he signed the code, but was never paid more than $5 a week, although she was entitled to $6.34. She is now suing for $21.44, being the difference between what she received during the 16 weeks from defendant and what she was entitled to under the code.

As already stated, this is an action to recover wages alleged to be due under the provisions of the "blanket code" of the National Recovery Administration. The plaintiff was employed by defendant as a waitress. On or about August 10, 1933, the defendant, a restaurant owner, entered into an agreement with the President of the United States, one of the provisions of which provided for a minimum wage of $15 a week. This rate was later modified to allow owners of restaurants to pay a minimum of $.28 an hour rather than the $.37½ hour rate which made up the $15. After signing the agreement of August 10, 1933, defendant received the right to display the "blue eagle" emblem, which he did. Thereupon the wages of plaintiff were raised to a sum less than the minimum provided for in the agreement. Plaintiff continued to work for defendant, and now brings this action to recover the difference.

The sole question raised in the pleadings is whether there can be a recovery by an employe for wages provided for in an agreement entered into between an employer and the President of the United States under the terms of the Modified Restaurant Act.

Although the suit here is on the contract of employment, the plaintiff relies on the said written agreement as fixing the amount of the wage recoverable. Plaintiff was not a party to this written agreement entered into by employer with the President, but this is not a material factor, insomuch as the agreement was for her benefit, and this being so she is entitled to recover as a "donee beneficiary".

Plaintiff bases her right to recover on the theory that the aforesaid agreement was entered into for her benefit. This proposition has been established conclusively in the following recent cases: Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158; Commonwealth v. Great American Indemnity Co., 312 Pa. 183, and Philipsborn v. 17th & Chestnut Holding Corp., 111 Pa. Superior Ct. 9.

In the case of Commonwealth v. Great American Indemnity Co., supra, there is an entire and complete statement of the law as it now stands in Pennsylvania. Suit was brought by certain materialmen on a bond given by the company to the Commonwealth. The bond provided that the contractor should "pay all lawful claims of subcontractors, materialmen and laborers for labor performed", etc. The materialmen were not parties to the surety contract and the question before the court was whether the surety was liable for the unpaid balance due them. The court, in holding that it was, stated:

"The last of our cases on this point is Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158, decided less than six months ago, where a recovery was allowed although no statute authorized the bond, and plaintiff was not an obligee in it. In an opinion by Mr. Justice Maxey, we quoted with approval from an article by Professor Arthur L. Corbin of the Yale Law School, in which he said (Selected Readings on the Law of Contracts, page 668): 'We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an "exception." "Privity" is not necessary; the third party need not be a "promisee," nor need he give consideration. . . . The third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. . . . [page 669] In the case of a surety bond for the payment of money, if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it . . . [page 677]. The words used in building contracts and in accompanying surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor. . . . In this class of cases it is sound policy to interpret the words liberally in favor of the third parties.'

". . . The only true basis is that stated in Prof. Corbin's article, supra, that 'if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it.'

" . . . In 44 out of the 48 states of the Union, that rule has long been enforced (Pennsylvania, Massachusetts, Connecticut and Michigan being the exceptions: Baurer v. Devenis, 99 Conn. 203, 206), and in the Restatement of the Law of Contracts, it is considered at length and adopted as the true rule. In section 133 it is said: '(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, . . . (a) a donee beneficiary, if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promise . . . is . . . to confer

upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary.' Section 135 says: '(a) A gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit; (b) A gift promise also creates a duty of the promisor to the promisee to render the promised performance to the donee beneficiary.' Section 139 declares: 'It is not essential to the creation of a right in a. donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made.' Section 345 (1) (b) says: 'The donee beneficiary can get judgment for the value of the promised performance, with interest'; and section 345 (2) gives the same right to a creditor beneficiary. Since the Restatement was adopted, Connecticut has joined with the other 44 states (Byram Lumber & Supply Co. v. Page, 109 Conn. 256, 260), and those determinations are so equitable and just, and so certainly carry out the intention of the parties, as shown by the contract and bond, that we willingly join with our sister states in their conclusion on this subject."

In short, it is apparent that as to third party beneficiaries Pennsylvania has now adopted the broad general rules of the Restatement of the Law of Contracts: Philipsborn v. 17th & Chestnut Holding Corp., supra.

Nor can it be contended that since the plaintiff was in the employment of the defendant at the time the contract was entered into and therefore gave no consideration for the promise that she cannot recover. For it is well settled that no consideration need move from the beneficiary to the promisor: I Williston, Contracts, secs. 114, 354; Commonwealth v. Great American Indemnity Co., supra.

Realizing as we do the importance of this case, as it may in Pennsylvania become a precedent for the determination of many such cases in the future, we have endeavored to obtain the later decisions through the country which, while not binding upon us, do indicate to us that where a public emergency demands the support of all and any remedial legislation which may be sustained in the hope of advancing a general recovery, a general improvement may be expected from a general increase in wages paid. Such a result is of course desirable, and our lower courts throughout the country have without exception supported this agreement.

We have attached to our opinion a copy of a letter addressed to Mr. Harry K. Sorensen, Office Manager of the National Recovery Act Compliance Board:

"February 14, 1934.

"Mr. Harry K. Sorensen, Office Manager,
    933 Commercial Trust Bldg., Phila., Pa.

"Dear Mr. Sorensen: Reference is made to your letter of February 7th, requesting a precedent case for prosecuting claims for back wages under PRA. Following is a list of cases in which an employe has been successful in a suit to collect back wages under PRA:

"Stedford v. Taylor, justice of the peace, Kansas City, Mo., January 1934.
"Bethel v. Karras, common pleas court, Detroit, Mich., November 13, 1933.
"Rush v. Somers, common pleas court, Detroit, Mich., November 13, 1933.
"Chipa v. Regas, justice of the peace, Tucson, Ariz., November 24, 1933.
"Beaton v. Avondale, district court, Denver, Colo., October 25, 1933.
"Brown v. Hunter, city court, Wichita, Kans.

"I trust this will provide the Bureau of Legal Aid in Philadelphia with the information they desire.

"Very truly yours,
[signed] "JOHN SWOPE, Chief, Field Section,
"Compliance Division."

354

Our attention is also called to an Associated Press dispatch from Chicago, reprinted in the Philadelphia Evening Bulletin under date of February 27, 1934, where Judge Edward J. Casey of the Municipal Court of Chicago allowed a claim brought by James M. Williams against Rienzi Valet Company, under the same circumstances as the case at bar. In this case James M. Williams, a negro, was allowed his claim of $166.50 against the Rienzi Valet Company, of which he was formerly an employe, for the difference between the wages he received and the President's scale of $15 a week for a 40-hour week. He alleged he worked 72 hours a week at $12.

On February 27th, Judge Casey ruled the NRA itself was not at issue, but "the contract entered into by the President and the employer before the establishment of the industry's code is the point at issue. An employe has the right to sue under such a contract which is entered into by two other parties for his benefit."

We have before us, received from the National Recovery Administration, release no. 2607, January 8, 1934:

### "KANSAS CITY COURT SUSTAINS WAGE AGREEMENT.

"A justice court decision in Kansas City, sustaining an employe's right to the minimum wage fixed under the President's Reëmployment Agreement, was received at National Recovery headquarters today.

"The decision rules that back pay must be given the employe who received less than the minimum wage.

"The decision was by Justice Preston Forsee in the case of a grocery clerk who sought $90 back pay, alleging he had been paid only $11 per week instead of $14.50, the required minimum wage.

"The employing grocer, Sam Taylor, Kansas City, through counsel, argued that the agreement was between the President and employer only, and made no definite provision for legal action by employes claiming payment of less than the minimum wage.

"The clerk's attorney contended that the agreement is a third-party contract in which the employe, as third party, has a clear right to sue in a wage dispute. This view was sustained by the court. The grocer said that case would be appealed to the circuit court.

"The court found that the defendant [the employing grocer] had, 'on August 2, 1933, signed the President's Reëmployment Agreement and received a "blue eagle" insignia in return, and displayed this insignia in his store window. This constituted a valid contract between the defendant and the Government.' . . . Under Missouri law, the ruling continued, a third party, although not named or known at the time of the execution of a contract, may act against the party breaching the contract.

" 'Clearly', the court added, 'the President, who was one party to the contract, was not the beneficiary, but it was for the benefit of the wage earners and their employers who, having signed the contract, were legally permitted to display the "blue eagle" emblem. The defendant, soliciting the emblem by signing the President's agreement displaying the insignia, is now estopped to deny its applicability or its effectiveness.

" 'Under the agreement the defendant was bound to pay all employes then employed or thereafter employed the agreed scale so long as the agreement was in effect.'

"The ruling developed the point that groceries include many items that come under interstate commerce, and that by signing the President's agreement and

displaying the 'blue eagle' the defendant 'thereby accepted whatever benefits or burdens that might accrue.'

" 'If the wages he obligated himself to pay his employes were too much, it is his misfortune, for he chose to sign the agreement and accept the possible benefits therefrom. He was bound to pay the contract price to his employe, and having paid him less, the balance is adjudged to plaintiff [the clerk]. Therefore, the judgment is for plaintiff in the sum of $90 and the costs of this action.' "

Recently, namely, on October 13, 1933, a decision was handed down by the circuit court of Wisconsin, holding that a State court had the right to issue an injunction restraining employers of labor from violating their own contracts made under the "blanket code" with the President of the United States, even though the plaintiffs in the suit were third-party beneficiaries. The court said:

"Upon the theory that the 'blanket code' agreement between the defendant and the President constitutes a contract manifestly for the benefit of third persons, namely, the defendants' employes, this court unhesitatingly assumes jurisdiction of the agreement between the defendant and the President as the subject matter of this proceeding, including the incorporation and embodiment therein of the provisions of the National Industrial Recovery Act, among them section 7 (a)": Wisconsin State Federation of Labor v. Simplex Shoe Mfg. Co., Circuit Court of Milwaukee County, Wis., cited in 1 Prentice-Hall Federal Trade and Industry Service, par. 8004.

For these reasons, both because the law in Pennsylvania has recognized third-party beneficiary suits for over a century, where the third party was the sole person interested in the enforcement of the contract, and because of the great public interest involved in maintaining the integrity of these contracts, the suit of the plaintiff in this case should be allowed, and the affidavit of defense raising questions of law is dismissed. The defendant is allowed a period of 15 days within which to file his affidavit of defense.