# McClelland et al. v. New Amsterdam Casualty Company

*Wm. W. McKim* and *Lewis M. Stevens*, for plaintiffs.
*Andrew R. McCown*, for defendant.

ALESSANDRONI, J., June 28, 1935. — The McClelland Company entered into a contract with Morris Wood for the erection of a large apartment building in the City of Philadelphia to be known as Green Hill Farms, the con-

tract being dated June 29, 1928, and the total price being $538,448. The contract provided that before the issuance of the final certificate of approval the McClelland Company as general contractor was obliged to submit evidence satisfactory to the architect that all payrolls, material bills and other indebtedness connected with the work had been paid; and that the percentage retained by the owner, totaling approximately $80,000, was not to be paid to the McClelland Company until such proof was submitted and a full release of all liens delivered. The McClelland Company in turn entered into a contract with M. F. Dussinger & Company as subcontractor for the plumbing work and materials required in the erection of the building.

M. F. Dussinger & Company as principal and the defendant as surety executed a bond in favor of the McClelland Company, contractor, and Morris Wood, owner, in the amount of $67,180 on October 8, 1928, which bond incorporated by reference the terms and conditions of the contract between the general contractor and the subcontractor, and was conditioned "that if the said principal shall well and truly perform the terms and provisions of said contract and the obligations on his part required to be performed, and shall pay all bills for labor, materials and supplies furnished in connection therewith, then this obligation shall be null and void, otherwise to be and remain in full force and effect." This bond is the basis upon which the present action rests.

Dussinger & Company began work on the contract in September of 1928 and performed their work on schedule and satisfactorily until September 23, 1929. In November of 1928, Dussinger informed McClelland that he did not have enough credit to purchase at one time the large amount of materials required for the job and asked him to guarantee the payment of an order which he was placing with the Hajoca Corporation for the necessary materials. McClelland stated that he executed the guarantee relying on the provisions of the bond. Subsequently, sev-

eral additional orders were guaranteed for Dussinger by McClelland, but these do not now form part of the claim in this suit. On September 23, 1929, Dussinger notified McClelland that he could not proceed further on the contract for lack of funds, and the McClelland Company immediately notified him and the defendant surety of the default in accordance with article 3 of the contract between the parties, which gave the contractor the right to terminate the employment of the said contractor on 3-days' notice, upon default. Dussinger and Company subsequently became bankrupt and the McClelland Company was required to pay the balance due for materials supplied Dussinger for the Green Hill Farms project. The balance then due was $10,175.20.

McClelland testified that he did not consider the request for a guarantee by Dussinger as a default and that it was customary for general contractors to give such assistance to their subcontractors. There was also other testimony establishing a general custom among contractors to help subcontractors with credit for materials. Dussinger himself testified that if the guarantee had not been executed by McClelland he would have been able to continue with his work on the contract by purchasing smaller lots of material at higher prices. No money was diverted by Dussinger from the Green Hill Farms project to other work. It was also testified that the execution of the guarantee by McClelland reduced the loss that would have resulted when a default occurred, and that by reason thereof the materials were purchased at a lower price than would have been the case if smaller quantities had been ordered.

All questions were submitted to the jury in a careful charge. The jury returned a verdict for the plaintiffs in the sum of $12,480.50. This motion seeks to set the verdict aside upon the theory that the plaintiffs have not established a right of action against the defendants.

The plaintiff, McClelland, instituted this action, proceeding on two legal theories. The first is based upon the

premise that the Hajoca Corporation had a right to recover the sum due it for materials as a third party beneficiary on the bond executed in favor of the plaintiffs, to which right McClelland is now subrogated. The second is that the plaintiff McClelland is entitled to recover on the bond because of breach of the condition that the materialmen be paid, McClelland being obliged to pay the material claim in order to fulfill his contract with the owner. We are of the opinion that both theories are sustained by the law of this State.

The defendant first argues that the Hajoca Corporation could not recover on the bond for materials furnished Dussinger and, therefore, McClelland could not be subrogated to any legal right in making such payment. The basis for this contention rest primarily upon the decisions of the Supreme Court in the case of Greene County, for use, v. Southern Surety Co., 292 Pa. 304, and the cases which followed it. The condition of the bond in question was that Dussinger & Company "shall pay all bills for labor, materials and supplies". The Greene County case has long been recognized as inequitable and contrary to the best considered legal opinion in this country. This was acknowledged by Mr. Justice Kephart in his opinion in the Greene County case, but the rule of stare decisis was there invoked by the Supreme Court. Since that time exceptions to the established rule have gradually whittled away the effect of that decision: Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158; until finally our appellate courts have wholly disregarded it: Commonwealth v. Great American Indemnity Co., 312 Pa. 183; Philipsborn v. 17th & Chestnut Holding Corp., 111 Pa. Superior Ct. 9. The latter cases definitely overrule the Greene County case and bring the law of Pennsylvania on third party beneficiaries into complete accord with the rule prevailing in 45 of the remaining 47 States of the Union, as well as with the opinion expressed by the learned authorities who prepared the Restatement of the Law of Contracts.

A similar bond was interpreted by the Supreme Court in Commonwealth v. Great American Indemnity Co., supra, wherein the court stated on p. 190:

"In an opinion by Mr. Justice Maxey, we quoted with approval from an article by Professor Arthur L. Corbin of the Yale Law School, in which he said (Selected Readings on the Law of Contracts, page 668) : 'We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an "exception". "Privity" is not necessary; the third party need not be a "promisee," nor need he give consideration. . . . The third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him . . . [page 669] In the case of a surety bond for the payment of money, if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it . . . [page 677] The words used in building contracts and in accompanying surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor. . . . In this class of cases it is sound policy to interpret the words liberally in favor of the third parties.' "

"In 44 out of the 48 States of the Union, that rule has long been enforced (Pennsylvania, Massachusetts, Connecticut and Michigan being the exceptions: Baurer v. Devenis, 99 Conn. 203, 206), and in the Restatement of the Law of Contracts, it is considered at length and adopted as the true rule. In section 133 it is said: '(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, . . . (a) a donee beneficiary, if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee is . . . to confer upon him a right against the promisor to some performance

neither due nor supposed or asserted to be due from the promisee to the beneficiary.' Section 135 says: '(a) A gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit; (b) A gift promise also creates a duty of the promisor to the promisee to render the promised performance to the donee beneficiary.' Section 139 declares: 'It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made.' Section 345 (1) (b) says: 'The donee beneficiary can get judgment for the value of the promised performance, with interest'; and section 345 (2) gives the same right to a creditor beneficiary. Since the Restatement was adopted, Connecticut has joined with the other 44 states (Bryam Lumber & Supply Co. v. Page, 109 Conn. 256, 260), and those determinations are so equitable and just, and so certainly carry out the intention of the parties, as shown by the contract and bond, that we willingly join with our sister states in their conclusion on this subject, especially as the legislature by the Act of June 23, 1931, P. L. 1181, has now established our public policy in regard to the matter, by expressly providing for such a provision in all future bonds."

Mr. Justice Kephart, in a concurring opinion, declares: "that the decision in this case overrules Greene County v. Southern Surety Co., 292 Pa. 304."

In Philipsborn v. 17th & Chestnut Holding Corp., supra, the Superior Court, construing the same question stated:

"The payment was not to be made to a class, but to an ascertained individual and even where a class is referred to in a bond, if it is manifest that the intention is to give the right to sue, anyone of the class may avail himself of it even if he was not named in the bond or contract as a party thereto. Concrete Products Co. v. U. S. Fidelity & Guaranty Co., 310 Pa. 158, 165 A. 492.

"Whether the above statement be correct or not, we believe that the Supreme Court has definitely changed the rule relied upon by the defendant and has by adopting the statement contained in the Restatement of the Law of Contracts by the American Institute changed the law in Pennsylvania so as to conform with that of nearly all of our sister states. It will serve no useful purpose to repeat what Justice Simpson has said in Com. v. Great American Indemnity Co., 312 Pa. 183, 192, 167 A. 793. Under the rule as set out in the restatement, a beneficiary can assert his rights against the party who has made a promise for his benefit, even if he is not a party to the contract.

"The appellant claims that the above case does not rule the present, for the reason that Justice Simpson in adopting the restatement of the institute in the words following qualified it by the reference to the Act of Assembly: 'We willingly join with our sister states in their conclusion on this subject, especially as the legislature by the Act of June 23, 1931, P. L. 1181, has now established our public policy in regard to the matter, by expressly providing for such a provision in all future bonds,' and argues that the adoption of what may be called the 'new' rule for this state applies only to the subject matter involved in the above case, that is, to contractor's bonds given in the making of public improvements. We do not so understand the language employed. The passage of the Act of Assembly was an additional inducement for the change of the attitude of the Supreme Court in this matter, but did not, if we take the definate language employed, limit its application to any particular class of contracts."

It can, therefore, be definitely stated that third party beneficiaries in Pennsylvania can now recover on contracts in the same manner as if they were parties to them. The Hajoca Corporation, therefore, had a valid right of action upon the bond in question, and the McClelland Company in paying this claim unquestionably

was subrogated to the rights of the materialman. In fact, the question of subrogation is not raised by the defendant.

McClelland, as the obligee of the bond, had a right of action to recover any damages sustained by him by virtue of the breach of the condition of the bond. The evidence fully establishes that before the retained percentage of the contract price for the erection of Green Hill Farms could be received by him, it was obligatory upon him to submit proof that all bills for labor and material had been· paid. As this retained percentage amounted to· approximately $80,000, the general contractor had a real and active interest in seeing that bills for labor and material were paid and, pursuant thereto, he demanded the execution of the bond now before us as security for the fulfillment of this phase of the contract. He testified that he executed this guarantee for Dussinger in reliance upon the conditions of the bond, and that it was necessary for those bills to be paid before he could collect the balance due him from the owner. The condition of the bond was clear, and there having been a breach of its provisions the plaintiff's right of action thereon became absolute.

The defendant argues, however, that when Dussinger requested the execution of the several guarantees in question by McClelland, such requests constituted breaches of contract which required immediate notice to the surety. Such a conclusion is neither founded upon the evidence nor in the law applicable thereto. It was definitely testified that it was customary for general contractors to execute such guarantees for materials, and that Dussinger could have continued with the contract and performed his obligations thereunder even if the guarantees had not been executed. The only effect of the execution of the guarantees was to enable Dussinger & Company to obtain lower prices for the materials used, which unquestionably redounded to the benefit of the defendant. Moreover, a mere request for the execution of a guarantee does not constitute a breach of contract. As stated in Clavan v. Herman et al., 285 Pa. 120, 125:

"Upon receipt of the letter in question, plaintiff had the right to accept it as a breach of the contract and sue for resulting damages. Acceptance of the breach would have absolved him from further performance or tender of performance on his part, and placed him in position to claim from defendants damages to the amount of the difference between the contract price and the market value of the goods at the time and place of delivery: Frank Pure Food Co. v. Dodson, 281 Pa. 125, 129, and cases cited. A mere request, however, to cancel a contract, or notice of intention not to perform, falls short of a cancellation or breach of contract unless and until accepted and acted upon by the other party. When defendants sent to plaintiff the letter of May 28th, requesting cancellation of the balance of the order, plaintiff not only refused to accept such cancellation, but expressly notified defendants he would expect the contract to be carried out in accordance with its terms. In the face of this positive refusal to permit a cancellation, plaintiff is not now in position to claim the contract was terminated." Accord: McCormick et al. v. Fidelity & Casualty Co., 307 Pa. 434.

Clearly the request for the execution of the guarantee would not constitute a request for the cancellation of the contract, nor did the McClelland Company ever consider it as a breach. Under the foregoing authorities, even if the request for the execution of the guarantee could be construed as a cancellation, it would not constitute a breach unless accepted, which is contrary to the evidence in this case.

The defendant further argues that it was prejudiced by the execution of the guarantees, but there is nothing in the evidence to sustain this argument. On the contrary, the evidence fully indicates that the execution of the guarantees resulted in a saving to the defendant, and we find no evidence to the contrary. The question was one for the consideration of the jury and has been decided in favor of the plaintiffs. We find no prejudicial departure from the terms of the bond, for the principal of the

bond was obligated to supply the materials in question, and the execution of the guarantees merely aided him in fulfilling his obligation. As stated in Phillips v. American Liability & Surety Co. et al., 309 Pa. 1, 9:

"We have consistently adhered to the principle that where a corporation, as a business for profit, undertakes the obligation of suretyship for a money consideration, only a material and prejudicial departure from the terms of the contract will release the surety: Young v. American Bonding Co., 228 Pa. 373; Loughney v. Huntsman Construction Co., 252 Pa. 131; Phila. v. Ray, 266 Pa. 345; Sokoloff v. Fidelity & Casualty Co. of New York, 288 Pa. 211. This is true even though the bond contains a provision that it is to be construed strictly: M. E. Church v. Equitable Surety Co., 269 Pa. 411."

It, therefore, appearing that the verdict is fully supported by the evidence and the law applicable thereto on either of the two theories, the motion for judgment non obstante veredicto cannot be sustained.

And now, to wit, June 28, 1935, the motion for judgment n. o. v. is overruled, and the prothonotary is directed to enter judgment on the verdict.