## Commonwealth *v.* Licini, Appellant.

Argued September 26, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Irving W. Coleman,* for appellant.

*G. S. Parnell,* Special Deputy Attorney General, with him *Claude T. Reno,* Attorney General, *Frank E. Coho,* Deputy Attorney General, and *Charles J. Ware,* Assistant Deputy Attorney General, for appellee.

OPINION BY KELLER, P. J., January 30, 1940:

This appeal comes to us from the judgment of the Court of Quarter Sessions of Lehigh County finding the defendant guilty of violating the provisions of the Milk Control Law of April 28, 1937, P. L. 417, 31 PS 700j, and sentencing him to pay costs of prosecution and a fine of $25. While the preliminary matters are not included in the printed record—as they should have

been—it appears that a summary proceeding was instituted before an alderman, pursuant to section 1001 of said Act, charging the defendant—this appellant—with having violated section 401 of said Act (31 PS 700j-401), which requires milk dealers to be licensed by the Milk Control Commission and forbids a milk dealer from buying milk from producers or others within this Commonwealth for storage, manufacture, processing, distribution or sale, and from selling or distributing milk within this Commonwealth, unless duly licensed as provided in the Act. Following a hearing, he was convicted and sentenced in accordance with said Act. By special allowance an appeal was granted by the court of quarter sessions, with the result above stated.

The facts, as stipulated, show that the appellant is a subdealer as defined in the Milk Control Law, sec. 103, viz., "Subdealer means any milk dealer handling milk within the Commonwealth, who sells all such milk to consumers or stores in the same containers as those in which he purchased it from other milk dealers." A milk dealer is defined in a prior clause in the same section to mean "any person, *including any* store or *subdealer,* as hereinafter defined, who purchases or handles milk within the Commonwealth, for sale, shipment, storage, processing or manufacture, within or without the Commonwealth. A producer who delivers milk to a milk dealer only shall not be deemed a milk dealer. ......" (Italics supplied).

The appellant defended on the ground that the Act is unconstitutional in so far as it requires subdealers to be licensed by the commission, because—he alleges that—contrary to the provisions of Art. III, sec. 3 of the Constitution, such provision is not clearly expressed in the title of the Act; and while he was not specifically charged before the alderman with failure to file a bond with the Commission as a subdealer as required by section 513 of said Act, appellant raises the same question

as respects that provision of the Act, and it may be considered here, for the filing of a bond under section 501 or section 513 is necessarily involved, since no license can issue unless a bond is filed. There is no merit in either contention.

It will be noted that, by the very definitions of milk dealer and subdealer in the Act, a subdealer is a *milk dealer,* who purchases milk from *other milk dealers* and sells it to consumers or stores in the same container in which he purchased it; and the term 'milk dealer', as used in the Act, is specifically declared to include any subdealer as thereinafter defined. Therefore when all *milk dealers* are required by the Act to be licensed by the Commission and are forbidden to buy, sell or distribute milk without such a license, it necessarily includes all subdealers, for the greater includes the less, and the whole includes a part; and the title to the Act sufficiently clearly expresses this, for it reads, inter alia, as follows: "An Act relating to milk and the products thereof; creating a Milk Control Commission; establishing its jurisdiction, powers and duties; regulating the production, transportation, manufacturing, processing, storage, distribution, delivery and sale of milk and certain products thereof; providing for the *licensing of milk dealers* and the payment of fees therefor; requiring *milk dealers to file bonds to secure payment for milk to producers and certain milk dealers;* . . . . . . prescribing penalties, fines and imprisonment for violations of this act and rules, regulations and orders of the commission." (Italics supplied).

The title, therefore, clearly gives notice (1) that it provides for the *licensing of milk dealers,* and (2) that *milk dealers are required to file bonds* to secure payment for milk to (a) *producers* and (b) *certain milk dealers.* Appellant was a milk dealer, as that term is commonly used and understood. The title to the Act accordingly put him on notice that it dealt with his business and required him to obtain a license and file a bond

if he wanted to continue to sell and distribute milk. A reading of the Act would then have disclosed that he fell within an artificial class of milk dealers created by the Act, called subdealers, but that nothing in the Act relieved him of the requirement imposed on *all milk dealers* to procure a license and file a bond. A reading of the Act would also have shown the reason for including in the title the requirement of a bond to secure payment for milk to "certain milk dealers", which was intended to apply to milk dealers who are subdealers, and who buy their milk from other milk dealers who purchase it from producers, which is within the exact language of section 513, which provides for the filing of bonds by subdealers; while all other milk dealers buy their milk from the producers and are required to file bond to secure payment for milk purchased from them, under section 501.

The other questions raised by appellant were decided adversely to him in *Rohrer v. Milk Control Board*, 322 Pa. 257, 273, 186 A. 336; *Colteryahn Sanitary Dairy v. Milk Control Commission*, 332 Pa. 15, 20, 1 A. 2d 775; and *Milk Control Board v. Eisenberg Farm Products*, 332 Pa. 34, 200 A. 854.

In the last mentioned case, Chief Justice KEPHART, speaking for the Court, pointed out that it was necessary for the protection of the public that producers of milk be given security that they would be paid for the milk purchased from them, saying (pp. 42, 43) ; "We have held in *Colteryahn Sanitary Dairy v. Milk Control Commission,* and *Keystone Dairy Co. v. Milk Control Commission,* 332 Pa. 15, that the Act of January 2, 1934, P. L. 174, and the Acts of April 30, 1935, P. L. 96, and April 28, 1937, P. L. 417, amending and reenacting its provisions, are constitutional. See *Rohrer v. Milk Control Board,* 322 Pa. 257, where it was held that licensing and price-fixing had a direct and substantial relation to sanitation, public health and public welfare. While bonding was

not specifically mentioned, it was listed and necessarily included as it was one of the questions in the case. It was conceded at the argument in the present case that the Court would take judicial notice of the fact that licensing and bonding do bear a necessary relation to the preservation and continuation of an adequate supply of pure milk, a necessary article of food in the State, and are in the interest of sanitation and public health. These provisions are also a protection against the danger of fraud to the producer and public ...... Such regulations, tending to prevent strikes and the dumping of the product on the market, harmful to the public; to provide a fair price and secure its payment, are necessary to prevent cutting off the supply to the public and to assure its purity and necessary quality. With this end in view the bonds are required as securities for the extension of credit by producers, to prevent fraud and imposition on them, and to eliminate irresponsible and dishonest dealers who are a constant menace to the consuming public. Bonding is therefore related to this legitimate purpose, which is a proper exercise of the police power. Moreover, this Court has held that the legislature may constitutionally require bonds in other industries affected with a public interest to secure payment to subcontractors, mechanics, laborers and materialmen, because of the very elements of fraud prevention, and the inability, otherwise, of those to be benefited to procure payment or credit. See the opinion of Justice SIMPSON, in *Commonwealth v. Great American Indemnity Co.*, 312 Pa. 183, at 196." The latter part of this quotation answers appellant's contention that the act violates Art. III, section 7 of the Constitution prohibiting special laws providing or changing methods for the collection of debts.

It is equally clear that bonds required from subdealers to protect milk dealers, who purchase the milk on credit from producers, are likewise for the ultimate protection

of the public and the producers, who might be injuriously affected by the failure of irresponsible and dishonest subdealers to pay milk dealers for the milk which the producers have sold the latter on credit. Certainly the provision is not so remote from or foreign to the general scheme of the Act as to remove it from the police powers exercisable for the welfare of the public under the Milk Control Law, but on the contrary it has a reasonable relation to the general purposes and provisions of that Act.

Judgment affirmed.