Eastern Milk Producers Cooperative Association, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Milk Marketing Board, Respondent.

Submitted on briefs, February 3, 1981, to President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, CRAIG, MACPHAIL and PALLADINO. Judges WILKINSON, JR. and WILLIAMS, JR. did not participate.

*John G. Hagan, Hagan & Hagan,* of counsel, *Williams, Micale & Wells,* for petitioner.

*Daniel T. Flaherty, Jr.,* Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, May 6, 1981:

Eastern Milk Producers Cooperative Association in our original jurisdiction seeks to set aside the Pennsylvania Milk Marketing Board's distribution of $180,000 in surety bond proceeds to 216 independent milk producers. The Board filed preliminary objections asserting that Eastern fails to state a cause of action. Objection sustained.

Keystone-Harmony, a licensed milk dealer, went bankrupt. During the ensuing bankruptcy proceedings, the Board successfully petitioned the trustee to release a surety bond filed by Keystone-Harmony pursuant to Section 501 of the then-existing Milk Marketing Law.[1] The Board then brought suit against Keystone's insurer to enforce payment of the surety.

The bond netted $180,000 in proceeds all of which were distributed to 216 milk producers, including Eastern, to satisfy claims against Keystone-Harmony

---

[1] Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §700j-501 et seq., known as the "Milk Marketing Law" was repealed and replaced by the Milk Producers' Cooperative Security Funds Act, Act of July 10, 1980, P.L. 481, 31 P.S. §625.1 et seq.

for delivered but unpaid for milk. In fact, Keystone-Harmony collectively owed the milk producers $1,609,-540.63 and individually owed Eastern $467,743.56.

The Board calculated Eastern's share of the proceeds at $52,309.24. This figure was arrived at by multiplying the total proceeds ($180,000) by a fraction which represented the number of pounds of milk shipped to Keystone-Harmony by Eastern, for which no payment was made, as compared to the total number of pounds shipped by all producers for which no payment was received. Eastern argues that since its claim was the oldest it should be satisfied first. In short, Eastern argues that distribution should be made on a priority rather than a pro-rata basis. We disagree.

Eastern's position is contrary to the statutes, case law and legislative intent behind the Commonwealth's Milk Marketing Law.

In *Commonwealth v. Licini*, 138 Pa. Superior Ct. 277, 282, 10 A.2d 923, 925 (1940), the Superior Court stated "the bonds are required as securities for the extension of credit by producers, to prevent fraud and imposition on them." Section 571 of the then-existing Milk Marketing Law established the procedure for bond distribution as:

> The board shall prescribe the procedure for the payment out of the proceeds of any bond or collateral required by this article, of the amounts found due to producers or handlers or dealers based on sales or deliveries of milk by them to a milk dealer or handler who has posted a bond or collateral: *Provided, however, That if the proceeds of a bond or of collateral which has been posted by a milk dealer or handler shall be insufficient to pay in full the amounts due to producers who have sold or supplied milk to such milk dealer or handler, the moneys avail-*

*able shall be devided pro rata among such producers.* (Emphasis added.) 31 P.S. §700j-511.

It is clear that the bonding requirement is for the protection of milk producers as a collective group. It is clearer still that the Board's distribution was made in accordance with the provisions of Section 571.

Preliminary objection is sustained.[2]

### ORDER

The preliminary objections filed by the Pennsylvania Milk Marketing Board are hereby sustained and the complaint in equity filed by Eastern Milk Producers Cooperative Association is hereby dismissed.

Judge WILKINSON, JR., did not participate in the decision in this case.

---

[2] Having upheld the Board's action as a matter of course, we decline to address the issue of sovereign immunity.