## Commonwealth *v.* Great American Indemnity Co., Appellant.

184

Argued May 24, 1933.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Frederic L. Ballard* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Robert Brigham* and *Charles I. Thompson,* for appellant.

*Thomas Raeburn White,* with him *Charles A. Taussig,* for appellee in No. 260.

*Edward J. Mingey,* for appellee in No. 261.

*Edward H. Cushman,* with him *Louis Gorrin,* for appellee in No. 262.

Opinion by Mr. Justice Simpson, June 30, 1933:

The Commonwealth brought suit against the Great American Indemnity Company, as surety for the Nelson-Pedley Construction Company to recover on a construction bond given by the two companies to her, for the loss which she sustained by reason of the latter's breach of contract in the matter of the construction for her of South Office Building No. 2, on the capitol grounds at Harrisburg. Subsequently, each of these two appellees filed in the same court, as of the same term and number, a petition for leave to intervene, which was duly granted, and then each of them filed a statement of claim, in the name of the Commonwealth to his or its use, seeking to recover, on the same construction bond, the balances alleged to be due to him or it by the construction company, for work done and materials furnished by each of them in the erection and construction of that building. The procedure adopted was that prescribed by the Act of June 23, 1931, P. L. 1181, the procedural methods of which were properly followed, though the statute was passed after the work was done: King v. Security Co. of Pottstown, 241 Pa. 547, 551-2; Dunn v. Milanovich, 305 Pa. 401. To their statements of claim, defendant filed affidavits of defense, which raised no objection to the caption of the cases, nor to the amounts claimed, if plaintiffs are entitled to recover at all, except in two respects hereinafter considered. The court below held the affidavits insufficient and entered judgment for each of use-plaintiffs. Therefrom the present appeals were taken.

The construction contract provides that "The......
General Conditions and Specifications hereto attached
......are hereby incorporated into and made parts of this contract to the same extent as if they were herein fully set forth." The general conditions provide that "At the time of signing the contract and before it becomes effective, the contractor and his surety......shall execute an indemnity bond on the form annexed hereto

marked 'Construction Bond' [being in the form of the one now in suit]......as security for the faithful performance by the contractor of all covenants and agreements on the part of the contractor contained in this contract......The provisions of the contract as to performance by the contractor shall apply to any subcontractor, and to the officers, agents or employees of any subcontractor, in all respects as if he and they were employees of the contractor, and they shall be subject to the same provisions thereof as employees of the contractor, and the work and materials furnished by any subcontractor shall be subject to the provisions thereof as if furnished by the contractor......The final payments [of the contract price] shall not become due and payable until the contractor shall have furnished...... a written statement under seal from the surety company that payment to the contractor of the final payment shall not relieve the surety company of any of its obligations to the Commonwealth as set forth in the surety company's bond and until the contractor, if required by the Auditor General, *shall have furnished satisfactory evidence that all labor, material, outstanding claims and indebtedness of whatsoever nature arising out of the performance of the contract have been paid."* The construction bond declares that the contractor and the surety "are held and firmly bound unto the Commonwealth of Pennsylvania in the full and just sum of $3,430,000," but does not, in the declaratory clause, refer to the subcontractors, materialmen and laborers, who are to supply material and labor in the construction of the building. It provides, however, in the condition of the bond, which is the natural place to look for the nature and extent of the liability assumed by the obligor, that "the contractor shall well and faithfully do and perform the things agreed by him to be done and performed according to the terms of said contract, which is hereby made a part of this bond, the same as though it were set forth herein, *and shall pay all lawful claims*

*of subcontractors, materialmen and laborers for labor
performed and materials furnished in the carrying for-
ward, performing or completing of said contract."*
Shortly before the work of construction was completed,
the Secretary of the Department of Property and Sup-
plies of the Commonwealth wrote to defendant as fol-
lows: "That as of the present date Nelson-Pedley
Construction Company, Incorporated, owes to subcon-
tractors, laborers and materialmen approximately $770,-
000 and I call your attention to the provisions of the
contract and contract bond under which the contractor
agreed to pay all claims of subcontractors, materialmen
and laborers under the contract......for the construc-
tion of the South Office Building No. 2. Your Company
obligated itself as surety to see that this commitment
would be fulfilled." So far as this record discloses, no
answer was made to that notice.

There is no dispute touching the facts above set forth,
nor are there any countervailing proofs affecting the
main question we are required to decide, viz.: Under
the circumstances stated, is the surety liable to the sub-
contractors, materialmen and laborers, in an action by
the Commonwealth to their use, for any unpaid balance
due to them for work done and materials furnished in
the construction of the building? It must be conceded
that all the applicable authorities in this State cannot
be reconciled, though it is everywhere admitted that, if
an authorizing statute exists, such a recovery may be
had. One line of cases holds, following the older au-
thorities, that no one can sue on a bond unless he is a
party to it; the other decides that where it is clear the
bond was given in part for the personal benefit of the
mechanics and materialmen, suit can be brought upon
it by them. The former seems to be based on the an-
cient thought, now happily almost entirely done away
with, that pleading is the most important thing in liti-
gation (Brill v. Brill, 282 Pa. 276, 282-3) ; the latter
upon the belief that courts are organized to do justice,

in so far as this can be done, and that pleadings are not instruments to enable them to defeat it. In the instant cases, the suits are brought by the obligee,—the Commonwealth of Pennsylvania—to the use of the subcontractors and materialmen. Defendant did not challenge this method of suit; hence it must be conclusively presumed that they were properly thus brought. If defendant doubted the right to use the Commonwealth's name, it should have required the filing of a warrant of attorney, but this it did not do. It follows—entirely aside from the question of the individual rights of the materialmen and subcontractors, hereinafter to be considered,—that if the Commonwealth had any interest in the recovery of these sums, suit therefor can be maintained in her name; only her right need be alleged in the pleadings (Montgomery v. Cook, 6 Watts 238; M'Kinney v. Mehaffey, 7 W. & S. 276), and upon her right, without more, recovery may be had: Guaranty Trust & S. Dep. Co. v. Powell, 150 Pa. 16.

We have always held that she has such an interest. In Phila. v. Stewart, 195 Pa. 309, under the direction of an ordinance of the city, which had no statute for its support, the city required a contractor, in addition to the bond for performance of the contract, to give a bond to secure the payment of all subcontractors and materialmen. Suit was brought in the name of the city to the use of an unpaid materialman, and the action was sustained, though nothing was actually due to the city. The prior cases wherein recovery was refused because the third party was not an obligee in the bond, were all brought to the attention of this court at that time, but were brushed aside as wholly unimportant, the court saying (page 313): "There is nothing ultra vires or contrary to public policy in this condition. It is the right as well as the interest of the city to secure good work upon its contracts for public improvements, and there is no better policy towards that end than to satisfy honest and competent workmen that they can rely on

being paid. There being no right of mechanic's lien against public works, the work and materialmen are to that extent in the contractor's power as to pay, and that fact has a natural tendency to produce skimped work and inferior materials by the class of men willing to run that risk. Against this risk the city is entitled to protect itself by exacting assurance from the contractor that he will pay his honest debts incurred in doing the city's work." This was approved in Phila. to use v. McLinden, 205 Pa. 172, 176; Phila. to use v. Neill, 206 Pa. 333, 334; H. H. Robertson Co. v. Globe Indemnity Co., 268 Pa. 309, 311-12; Washington Steel Form Co. v. North City Trust Co., 308 Pa. 351, 355-6.

On this basis alone recovery might be sustained. The same conclusion is reached if we consider the individual rights of the subcontractors and materialmen. The last of our cases on this point is Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158, decided less than six months ago, where a recovery was allowed although no statute authorized the bond, and plaintiff was not an obligee in it. In an opinion by Mr. Justice MAXEY, we quoted with approval from an article by Professor Arthur L. Corbin of the Yale Law School, in which he said (Selected Readings on the Law of Contracts, page 668) : "We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an 'exception.' 'Privity' is not necessary; the third party need not be a 'promisee,' nor need he give consideration......The third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him......[page 669] In the case of a surety bond for the payment of money, if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it......[page 677]. The words used in build-

ing contracts and in accompanying surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor......In this class of cases it is sound policy to interpret the words liberally in favor of the third parties."

In the instant case, appellant expressly admits that the Concrete Products case was properly decided, but contends that, because there the bond contained the words "we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein," which the bond here does not, that case is not an authority here. To this we cannot agree, not only because the above quotation shows we did not limit ourselves to that language, but because appellant's concession wholly destroys his basic contention that such a bond is invalid unless mechanics and materialmen are obligees in it, or a statute authorizes the clause relating to them, neither of which appeared in that case. The agreement and consent, as above quoted from the bond therein, does not affect this conclusion, but only makes a little clearer than is usual the fact that the bond is given for the benefit of the materialman and laborer. The only true basis is that stated in Prof. Corbin's article, supra, that "if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it." Here we have the ascertainable persons before the court, who, presumably on the faith of the promise (and the pleadings aver nothing to the contrary), entered into their contracts, did their work and furnished their materials.

In 44 out of the 48 states of the Union, that rule has long been enforced (Pennsylvania, Massachusetts, Connecticut and Michigan being the exceptions: Baurer v. Devenis, 99 Conn. 203, 206), and in the Restatement of the Law of Contracts, it is considered at length and

adopted as the true rule. In section 133 it is said: "(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is,..... (a) a donee beneficiary, if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee is......to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary." Section 135 says: "(a) A gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit; (b) A gift promise also creates a duty of the promisor to the promisee to render the promised performance to the donee beneficiary." Section 139 declares: "It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made." Section 345 (1) (b) says: "The donee beneficiary can get judgment for the value of the promised performance, with interest"; and section 345 (2) gives the same right to a creditor beneficiary. Since the Restatement was adopted, Connecticut has joined with the other 44 states (Byram Lumber & Supply Co. v. Page, 109 Conn. 256, 260), and those determinations are so equitable and just, and so certainly carry out the intention of the parties, as shown by the contract and bond, that we willingly join with our sister states in their conclusion on this subject, especially as the legislature by the Act of June 23, 1931, P. L. 1181, has now established our public policy in regard to the matter, by expressly providing for such a provision in all future bonds.

We need not press this phase of the subject any further, however, since we are of opinion that the amendatory Act of April 22, 1903, P. L. 255, which the court below (Arthur Greenfield, Inc. v. Great American Indemnity Co., 16 Pa. D. & C. Rep. 225) and the Court of

Common Pleas of Dauphin County (Com. to use, v. Metropolitan Casualty Ins. Co., 36 Dauphin County Rep. 28), decided was both constitutional and applicable to bonds like the present one, and, because of it, held the defendants therein liable to subcontractors, materialmen and laborers for the amounts due to them for work done and materials furnished in the erection and construction of the buildings referred to in them. Defendant concedes its liability if those decisions are correct, as we now decide they are.

The statute, which is an amendment to section 6 of the Mechanics' Lien Act of June 4, 1901, P. L. 431, 434, contains the words, as did the original act: *"and the Commonwealth hereby does,* and any division or subdivision thereof, or any purely public agency thereunder, may, *require that any contract for public work shall, as a condition precedent to its award, provide for approved security to be entered by the contractor to protect all such parties,"* that is, as previously expressed in the section, "any subcontractor who has furnished labor or materials......for any structure or other improvement for purely public purposes." Since the underscored words above expressly require the contractor's bond to cover the character of work done and materials furnished by appellees, these appeals must, under appellant's admission above stated, be decided in favor of appellees, unless the Act of 1903 is inapplicable or unconstitutional, as appellant claims it is.

Appellant's first contention is that the Act of 1903 "has nothing to do with this case for the very fundamental reason that the bond in suit, instead of having been written under the Act of 1903, was in reality written under section 2408 of the Administrative Code of April 9, 1929, P. L. 177, 316." This "very fundamental reason" is, however, itself fundamentally irrelevant. Of course the bond in suit was given under the Act of 1929, which specifies the course of procedure in the construction of buildings by the state; that statute does not

specify, however, what shall be the terms and conditions of the construction bond, but only (subsection (h), page 318) that the successful bidder "must, within ten days after such award [that is, the award of the contract], substitute for said check [that is, the check which accompanied his bid] a surety bond" of from 50% to 100% of the bid price of the work, as the department shall prescribe. The terms and conditions of the bond are not stated, doubtless because they had been set forth in previous statutes, which were still in full force and effect, and the bond here is the one which the department did prescribe, and was therefore, within the express language of the Act of 1929. Hence the statement in the Act of 1903 applies, if it is constitutional, that "the Commonwealth hereby does......require that any contract for public work shall, as a condition precedent to its award, provide for approved security" to protect subcontractors, materialmen and laborers in the payment of bills due to them in the construction of public buildings. This is so plain that it need not be further stressed.

On the point of constitutionality, it must always be remembered that unconstitutionality is never to be declared unless no other conclusion is reasonably possible; to doubt is to deny unconstitutionality: Com. ex rel v. Hyneman, 242 Pa. 244, 247; Bridgeford v. Groh, 305 Pa. 554. In the case of an amendatory statute, it is a matter of indifference whether or not the original statute was or was not unconstitutional: White on the Constitution of Penna., page 28; 6 R. C. L. 120, section 120. This must be so, since every word of the amended statute, including that quoted from the original statute, is the language of the legislature which passed the amended act in those words. This conclusion is important, since appellant admits that the requirement of a bond "though quite proper as independent legislation, cannot constitutionally be grafted on the mechanics' lien law." Before the amendment, the section spoke the language of the legislature of 1901; the amended statute

in its entirety speaks the language of the legislature of 1903. Strike down the former and the latter remains, under the authorities quoted, "proper as independent legislation," not merely as a graft on the mechanics' lien law. Finally, if a part of a statute is held to be unconstitutional, the language of that part may be referred to in order to clarify and sustain the part that is constitutional: Phila. v. Barber, 160 Pa. 123; Keystone State T. & T. Co. v. Ridley Park Borough, 28 Pa. Superior Ct. 635, 642.

Keeping these points in mind, especially the first thereof, let us examine the particular grounds of unconstitutionality alleged by defendant. The first attack is made upon the title as violating article III, section 3, of the state Constitution. We have often said upon this point—see Reeves v. Phila. Suburban Water Co., 287 Pa. 376, 387, and Scaife v. McKee, 298 Pa. 33, 41-2—that this constitutional provision "does not require the title of a statute to be an index of its contents, but presupposes a reasonably inquiring state of mind, which will follow the trail indicated by the main part of the titles into the body of the acts." The title of the Act of 1903 is "An act to amend an act, entitled 'An act defining the rights and liabilities of parties to, and regulating the effect of, contracts for work and labor to be done, and labor or materials to be furnished, to any building......or other structure or improvement, of whatsoever kind or character the same may be; providing remedies for the recovery of debts due by reason of such contracts, and repealing, consolidating and extending existing laws in relation thereto,' approved June 4th, A. D. 1901." Surely this title is ample to support a provision requiring a construction bond to be broad enough to "require that any contract for public work shall, as a condition precedent to its award, provide for approved security to be entered by the contractor to protect.....any subcontractor who has furnished

labor or materials thereto," even without reference to the rule which strongly presumes constitutionality.

It is next alleged that the Act of 1903 violates article III, section 7, of the state Constitution, because it is a "local or special law......providing or changing methods for the collection of debts." Confessedly, it is not a local law; nor is it a special law in the constitutional sense; nor does it provide or change any method for the collection of debts. It provides for the giving of a bond. Moreover, since Wheeler v. Philadelphia, 77 Pa. 338, which was decided the year after the Constitution went into effect, classification on such subjects has been sustained, except in those cases where it was arbitrary or was a mere excuse for evading the constitutional provision. In passing the Act of 1903, the legislature doubtless did so because it recognized the need of such classification, remembering, as we have hereinbefore quoted from Philadelphia v. Stewart, 195 Pa. 309, that the giving of a bond to protect mechanics and materialmen has a direct effect in producing, in public matters, better work at lower prices. If defendant's contention on this point were sustained, much of our wisest legislation would be stricken down. Under such a ban would fall all of the procedural statutes passed since 1874 in relation to the collection of debts; all those which give to wage claimants a preferential claim on moneys raised by execution; those requiring security on appeals where this was not required before; those requiring nonresident plaintiffs to enter security for costs; and the numerous acts improving municipal claim and distraint procedure. Nor could any such statutes be passed hereafter. This would make the constitutional provision intolerable, and cannot be adopted. Many statutes have been passed to protect workmen and materialmen; the former because of their inability to protect themselves adequately, and the latter, as in the case of mechanic's liens, because their labor and material have gone into

the building and have thereby enhanced its value. These matters alone justify a classification in their favor.

But, finally, continues appellant, the Act of 1903 was held to be unconstitutional in Smith's Appeal, 241 Pa. 336. This is too broad a statement. Part of it was, but that part has no relation to the question now under consideration. We so held as to the provision which directs that if a contractor on public work does not pay a subcontractor the amount due to him, the latter may give notice to the Commonwealth, which shall pay the balance due the contractor into court, for distribution to and among those entitled thereto. This unconstitutional part may, however, be entirely eliminated from the statute, and the part of it which requires security in this class of cases would remain unimpaired. Under such circumstances the valid part of the statute remains in force, because it is severable from the other, even though the unconstitutional part is contained in the same section as that which is constitutional: Rothermel v. Meyerle, 136 Pa. 250; Commonwealth v. Moir, 199 Pa. 534, 551; Penna. Mutual Life Ins. Co. v. Cuyler, 283 Pa. 422, 425; White on the Constitution of Penna., 28-29.

It follows, under the admission that such a bond is enforceable if it has valid statutory authorization, that plaintiffs had a right to sue on defendant's bond in the way they did. Hence but two subsidiary questions remain for consideration: (1) From what date does interest run? and (2) Was appellee in No. 260 liable for the injury to his work, caused by the fire which damaged the building, referred to at some length in Com. ex rel. v. Nelson-Pedley Construction Co., 303 Pa. 174, and Com. ex rel. v. Evans, 304 Pa. 445?

It was stated at the argument, without contradiction, that interest was allowed in the same amount as would have been recovered if the suit had been against the principal contractor. The opinion of the court below is silent on the subject, and the record, as printed for

our use, is equally silent. So far as concerns the claim of Arthur Greenfield, Inc. (No. 261, January Term, 1933), the printed record fails to disclose that the damages were ever assessed, but the final judgment in its favor is "for the sum of $23,610.07 with interest from June 7, 1930." This is assigned for error, and is error. In his statement Greenfield alleged he had furnished all his materials before that date; but the affidavit of defense, which, on this rule for judgment for want of an affidavit of defense, must be taken as true, alleges that the last of them was not furnished until "on or about October 1, 1930." The statement of claim further avers, and the affidavit of defense admits, that, beginning with "April 16, 1931, and at divers times thereafter," Greenfield "demanded payment of defendant." Under the circumstances stated, we hold that it was error to allow interest from June 7, 1930, but must decide whether it should run from October 1, 1930, or April 16, 1931.

Upon this point the authorities do not seem to be harmonious. In Penna. Co. for Ins. on Lives, etc. v. Swain, 189 Pa. 626, and Folz v. Tradesmen's Trust & Saving Fund Co., 201 Pa. 583, we held that interest ran from the date of the first demand, or the beginning of suit, if there was no prior demand. Plaintiffs allege, however, that these were cases where the claims upon the surety exceeded the penal sum of the bond—which was true as to the first of those cases and may have been true as to the second also—and that a different rule applies where the fact is otherwise, citing Philadelphia to use v. Pierson, 217 Pa. 193, and a number of federal cases. It was said in the Pierson case, which, on its facts, parallels the present one (page 197), "When it is remembered that defendant's undertaking was to pay what was due from Pierson to the plaintiff on the former's default, it becomes apparent that the question so elaborately argued, as to when a right of action accrued under the contract, has no place in the present inquiry."

The surety's liability here is the same as there, and the conclusion reached is in accord with the general rule as stated in 50 C. J. 91: "Interest when allowable as damages may be allowed from the time the sureties became liable, which, although it may not be from the same time that the principal is liable for interest, is generally, in the absence of statutory provision or stipulation in the contract to the contrary, such time." Here, there is neither a statutory provision nor a stipulation affecting this question. Moreover, that statement is in accord with the trend of the modern authorities, which usually hold that, up to the limit of the penal sum of the bond, the surety of a defaulting principal must do what the principal agreed to do—fully make good the principal's default. We conclude, therefore, that interest runs in the Greenfield case from October 1, 1930; and that the assessment in the Maragliotti case is correct. Indeed, in the latter there is no explicit denial of the dates from which plaintiff alleges interest should run.

On the other point it appears that when the fire above referred to took place, Maragliotti had done $31,000 of mural and decorative painting work, for which $20,500 had been paid on account by the principal contractor. The contract between them provided: "The contractor agrees that during the progress of the work *full* insurance on said work shall be maintained in his own name, against loss or damage by fire. The policies shall cover all work, incorporated in the building, and all materials for the same in or about the premises, and shall be made payable to the parties hereto, as their interests may appear." Maragliotti's work was damaged to the extent of $27,615, and the principal contractor gave to him an order as follows: "Kindly consider this our extra order to you in the amount of $27,615 to bring all your work in your shop and at the building up to the point where it was before the fire." No objection was made to any of Maragliotti's work which had been incorporated in

the building before the fire, and was in possession of the principal contractor. Upon the faith of that order, Maragliotti completed his contract and the principal contractor became liable to him for the amount claimed. Our question is—Is the surety also so liable? We think it is.

The circumstances leading up to the giving of the order for $27,615 are not stated, but no real difficulty arises because of this fact. Either the principal contractor effected the *full* insurance as it agreed to do and collected the amount thereof after the fire, or it did not. If it did, then it held the $27,615 for Maragliotti's benefit, and its failure to pay him made it liable for that amount, and excused him from further performance under the contract. If it did not fully insure, then it breached its contract with him, and he had the right to refuse to proceed. In either event, the principal contractor would have had to have the work done over again in order to complete the building, and the surety for the completion would have had to make good the loss. It follows that the surety was not damnified and hence cannot be heard to complain. Appellant's contention that our decision in Com. ex rel. v. Nelson-Pedley Construction Co., 303 Pa. 174, controls here, because the provisions of the contract there construed are, by reference, written into the Maragliotti contract, overlooks the vital fact that our decision in that case is based on the circumstance that the defendant there was obligated to deliver a completed building to the Commonwealth, and was still in possession when the fire took place, while here Maragliotti was under no such obligation, but had in fact performed a large part of his contract, and the principal contractor had accepted it and paid for much of it before the fire occurred.

The judgments of the court below are each affirmed, but the assessment of damages in the case of Arthur Greenfield, Inc., No. 261, January Term, 1933, must be reduced by disallowing interest prior to October 1, 1930,

CONCURRING OPINION BY MR. JUSTICE KEPHART:

While I concur in the opinion of the court, it should be pointed out that the decision in this case overrules Greene County v. Southern Surety Co., 292 Pa. 304. We stated in the Greene County case that so settled in the law of this Commonwealth was the rule therein mentioned that we were bound by the doctrine of stare decisis and must await legislative action to be free from it and come into accord with the more equitable, reasonable and prevailing view. The legislature by the Act of June 23, 1931, P. L. 1181, has indicated that public policy favors permitting recovery by the third party beneficiaries in such contracts.

It is to be regretted that this determination by the Court has been reached only after so many cases have been decided on the authority of the Greene County case. See Davis v. Southern Surety Co., 302 Pa. 21; Montgomery County v. Ambler-Davis Co., 302 Pa. 333; Pittsburgh v. Bucanelly Construction Co., 300 Pa. 27; Patterson v. New Eagle Borough, 294 Pa. 401; Pittsburgh v. Com. Cas. Ins. Co., 106 Pa. Superior Ct. 254; Somerset Borough v. Barber, 103 Pa. Superior Ct. 20; School Dist. of Reading v. New Amsterdam Cas. Co., 98 Pa. Superior Ct. 221, and very many cases in lower courts.