## Mechanical Insulation Co., Inc. v. J. Marcellus & Co., Inc.

*Frederick E. Smith*, for plaintiff.
*James C. Bowen*, for defendants.

BECKERT, J., September 3, 1964.—An action in assumpsit was commenced by plaintiff, Mechanical Insulation Co. Inc. (Mechanical) against J. Marcellus & Co., Inc. (Marcellus) and Royal Indemnity Co. (Royal) to recover the sum of $2,543.53.

A summary of plaintiff's complaint is as follows:

Marcellus, as general contractor, entered into a contract with the State Public School Building Authority (authority) for the construction of a school in Lower Southampton Township, Bucks County, Pa. Royal executed a surety bond, binding itself as surety, that Marcellus would promptly pay all money due for materials furnished and labor supplied. The authority, at or about the same time, entered into two separate con-

tracts with Mayson's Piping Contractors, Inc. (Mayson's) and American Sanitary Sales & Services Co., Inc. (American) for the performance of certain other work in connection with the construction of the school. Mayson and American, in turn, entered into contracts with plaintiff, Mechanical, for the installation of insulation on pipes which Mayson and American had contracted to supply. The complaint alleges that plaintiff performed its contract, but thereafter due to the actions of Marcellus, or its subcontractors, or employes, plaintiff's insulation was damaged, and the authority requested Marcellus to repair said damage, but they neglected and refused to do so. Authority then ordered Mayson and American to repair this damage, and they, in turn, required plaintiff, Mechanical, to do this work. Plaintiff, Mechanical, alleges that it has repaired and is now claiming that defendant, Marcellus, in accordance with the terms of its contract, and by virtue of the surety bond, is required to pay the reasonable cost thereof, and, in default of payment by Marcellus, Royal, as surety, is liable.

Defendants have filed preliminary objections to the complaint in the nature of a demurrer, contending that as plaintiff's complaint discloses that the work done by plaintiff was not performed in the doing of work contracted for between defendant, Marcellus, and the authority, and that plaintiff performed said work at the direction of Mayson and American, not Marcellus, therefore plaintiff is not a party who may recover on the surety bond.

The question, therefore, before us is whether plaintiff is to be considered as a third-party beneficiary, and, therefore, entitled to bring suit against the present defendant.

The bond executed by defendant, Marcellus, and defendant, Royal, as surety, contains the following language:

"The Principal and Surety hereby jointly and severally agree with the Authority herein, that every person, copartnership, association or corporation, who, whether as a sub-contractor, or otherwise, has furnished material or supplied or performed labor in prosecution of the work as above provided, and who has not been paid therefor, may sue in assumpsit on this bond in the name of the Authority for his, their, or its use, and prosecute the same to final judgment for such sum . . .".

The contract between authority and defendant, Marcellus, reveals that Marcellus had agreed to perform and was awarded the contract for ". . . the general construction of new secondary school, Lower Southampton Township School. . . ."

Pennsylvania has, since Commonwealth v. Great American Indemnity Co., 312 Pa. 183, 190, 191 (1933), aligned itself with the great majority of other jurisdictions in holding that third-party beneficiaries are entitled to recover against a contractor and its surety, privity not being necessary. Pennsylvania has also adopted section 165 of the Restatement of Security. See Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158 (1933); Commonwealth v. Great American Indemnity Co., 312 Pa. 183, supra; McClelland v. New Amsterdam Casualty Company, 322 Pa. 429 (1936); Arnold v. American Casualty Co., 13 Bucks 44 (1963). Said section provides as follows:

"Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, *unless the surety's contract in terms disclaims liability to such persons.*" (Italics supplied.)

Comment (c) found in the Restatement of Security reads:

"The surety is not liable to laborers and materialmen, even if he guarantees to government or a private owner that the contractor will pay for labor and materials, if the surety in terms provides in his contract that his liability is only to the creditor with whom he contracts."

The liability of a surety directly to unpaid laborers and materialmen depends upon the wording of the bond, either in the express words thereof, or by reasonable implication, together with the wording of the general contract, if the bond incorporates by reference the terms of the general contract. See City of Pittsburgh, to use, H. M. Kamin Agency v. Park View Construction Co. Inc., 344 Pa. 126 (1942); Pennsylvania Supply Company v. National Casualty Company, 152 Pa. Superior Ct. 217 (1943); Pennsylvania Turnpike Commission, to use, v. Andrews & Andrews, 354 Pa. 138 (1946).

The knotty and novel question raised by this demurrer is the necessity of plaintiff to be a subcontractor of defendant before he is entitled to maintain this action on the theory of third-party beneficiary. Defendants contend that the bond was not intended, nor was it within the contemplation of defendants, to benefit a plaintiff who was not its subcontractor and who performed work not at the direction of defendant, Marcellus, but at the direction of persons other than the defendant.

It, therefore, appears that a detailed examination of the terms of the bond and the contract must be made in an attempt to ascertain whether defendants intended to confer benefits on a person situated as is the present plaintiff.

The bond as executed by defendant, Marcellus, as principal, and defendant, Royal, as surety, was given

pursuant to section 10 of the Act of July 5, 1947, P. L. 1217, 24 PS §791.10, and is a performance bond, a maintenance bond and a labor and material bond. The bond, by subparagraph "A" thereof provides:

"That if the above bounden principal as Contractor shall well and faithfully do and perform the things agreed by him to be done and performed according to the terms of said contract, and all relating documents thereto and made part of said contract including the plans and specifications therein referred to and made a part thereof, and such alterations as may be made in such plans and specifications as therein provided, and which are hereby made part of this bond, the same as though they were set forth herein . . ."

It is, therefore, evident by the above wording that the bond incorporates the contract, specifications and all other documents within the bond itself, and turning to the contract we find the following pertinent paragraphs:

Third: "The Instructions to Bidders, Conditions of Contract, Specifications, hereto attached, the Plans described in such Specifications and identified by the signature of the School Board, and the School Authority, and the signature of the Contractor on one set, which set has been retained by the School Authority at his offices in Harrisburg, Pennsylvania, and all other prints, papers, documents, and forms attached hereto or referred to herein, (including the Bidder's Proposal, which is on file at the office of the School Authority) are hereby incorporated into and made parts of the Contract to the same extent as if they were fully set forth herein."

Under the heading "Conditions of Contract", Section II thereof, entitled "Bonds, Insurance and Contractor's Liability", paragraph 6 states:

"Upon receipt, by low bidder, of notice from the Authority of the award of contract, the successful bid-

der so notified shall visit Authority office, accompanied by his Surety or Sureties, for purposes of signing contract including bonds, and before contract becomes effective, the Contractor and his Surety, legally authorized to conduct business in the Commonwealth of Pennsylvania, and acceptable to the School Authority, shall execute an indemnity bond or bonds to the School Authority in the amounts of one hundred percent (100%) of the contract price of the work awarded the Contractor, as security for the faithful performance by the Contractor of all covenants and agreements on the part of the Contractor contained in this contract; an additional coverage in the amount of one hundred per cent (100%) of the contract price of the work, conditioned that the Contractor will promptly pay for all materials furnished and labor supplied or performed in the prosecution of the work, whether or not the material or labor enter into and become component part of the building; and also an additional coverage in the amount of ten per cent (10%) of the contract price as surety against defective or inferior materials or workmanship which may develop during the period of one (1) year from the date of completion and acceptance of the work performed under the contract."

Paragraph 8 of the same section provides:

"Any person or corporation furnishing materials or rendering services for this Project may maintain an action to recover for the same against the principal of any Labor and Material Bond in connection with this Project, as though such person or corporation were named therein, provided the action is brought within one (1) year after the time the cause of action accrued."

Under the heading "Mutual Responsibility of Contractors", paragraph 18 states:

"Should a Contractor in the performance of his contract cause damage to any person, any property, or work of another Contractor working on this project, he shall, upon due notice to do so from the School Authority or other party to the damage, arrange for an amicable settlement thereon. It is agreed by all parties herein that such disputes shall not delay completion of the work, nor be cause for claim against the Authority. Work shall be continued by the party claiming damages at his expense, subject to such damages as may be obtained by due course of law."

Under the heading "Materials, Equipment and Labor:, paragraph 37:

"Unless otherwise stipulated, the Contractor shall provide and pay for all materials, labor . . . and other facilities for the proper execution and completion of the work."

"Conducting the Work: paragraph 42, reads:

"The work shall be conducted so as not to interfere with work of other Contractors . . .

"Separate Contracts:, paragraph 52, states:

"If any part of the Contractor's work depends for proper execution or results upon work being done by another not under jurisdiction of the Contractor, the latter shall inspect and promptly report to the School Authority, copy to the Architect, any defects in the work done or being done by the other. Failure on the part of the Contractor to so inspect and report such defects in sufficient time to prevent any added costs or damage therefrom shall constitute an acceptance of this work by the Contractor, and the Contractor shall be liable for such increased costs or damage."

Under section IV, "Defective Work and Materials", paragraph 55 states:

"Any omission or failure on the part of the School Authority to disapprove or reject any inferior or defective work or materials shall not be construed to be

an acceptance of any such work or materials. The Contractor shall remove at his own expense any defective work or material rejected by School Authority and shall rebuild and replace the same without extra charge, or in case the School Authority does not consider the defect of sufficient importance to require the Contractor to rebuild or replace such inferior or defective work or material, the School Authority shall have the power and is hereby authorized to require the Contractor to submit a proposal for an equitable deduction from the stipulated price."

"Protection", paragraph 117, reads:

"The Contractor shall erect and maintain proper protection for all equipment and all parts of the building during all stages of construction, alterations, or repairs, and shall correct at his own expense any damage to the same to the satisfaction of the School Authority. Special precaution shall be taken to protect the floors from damage during the course of construction of the project.

And 119, under the same subheading, reads as follows:

"Regardless of the type of project, it will be the responsibility of the Contractor at all times to protect excavations, trenches and buildings from water damage, including damage by rainwater, ground water, backing up of drains, downspouts, or sewers. The General Contractor shall construct and maintain all necessary drainage and do all pumping necessary to keep the structure free from water and shall perform any pumping which may be necessary for the full and proper execution of the construction work and protection of the building, including all equipment installed therein."

There appears to be no doubt that the present bond incorporates the terms of the general contract together with other documents, and when all of these are

read in their entirety, and considering the fact that corporate surety bonds are to be construed strictly in favor of the obligee (Philadelphia, to use, v. Fidelity & Deposit Company of Maryland, 231 Pa. 208 (1911); Purdy v. Massey, 306 Pa. 288 (1932)), we reach the conclusion that plaintiff falls within the class of donee-beneficiary entitled to sue the present defendants.

Nowhere in the bond has the surety disclaimed liability to persons such as plaintiff. Certainly, it can be argued that the surety believed that by virtue of incorporating the terms of the contract and other papers within its bond, it had no right to so exclude persons such as plaintiff, and the surety being a profit-making corporation accordingly adjusted upwards their premiums.

For the purposes of this demurrer, it is undenied that defendant, Marcellus, was the general contractor and this is clear, the complaint states a cause of action under the conditions of the contract. The complaint alleges that "during the course of construction of the building certain items of the installation were damaged or destroyed by: (A) dampness, wetting and mildew, arising from dampness, caused by the accumulation and the remaining for a long period of time of water in the basement and crawlways of the building where the same had been installed; and, (B) by the actions of the Contractors, sub-contractors or employees thereof under the General Contractor, in walking upon the same or placing tools or other items used in construction thereof."

While we feel that we must take notice of the fact that the same conditions of contract were undoubtedly a part of the contract between the other two contractors, Mayson and American, and the authority, we do not feel that plaintiff is precluded from suing under the general contractor's contract and surety thereon. If there is any dispute between the prime contractors

as to who caused the damage, defendant contractor herein may join the other contractors and their sureties as additional defendants.

ORDER

And now, September 3, 1964, for the reasons above stated, the preliminary objections in the nature of a demurrer are overruled and dismissed, and defendants each to have 20 days within which to file an answer to plaintiff's complaint.