**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 121 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellee | : | Court at No. 2087 MDA 2014 dated |
| | : | 2/16/16 affirming the judgment of |
| | : | sentence of the Luzerne County Court |
| | : | of Common Pleas, Criminal Division, at |
| v. | : | No. CP-40-CR-0001372-2010 dated |
| | : | 10/24/14 |
| JOSEPH DERHAMMER, | : | |
| | : | |
| Appellant | : | ARGUED:  September 13, 2017 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                              **DECIDED:  November 22, 2017**

The issue raised in this discretionary appeal is whether the Commonwealth may punish an individual for conduct which was made a crime by an amended statute where the original version of the statute has been declared unconstitutional in its entirety.

In 1995, Appellant pled guilty to involuntary deviate sexual intercourse ("IDSI"), *see* 18 Pa.C.S. §3123, and was sentenced to five-to-ten years' incarceration.  Pursuant to Megan's Law, he was required, upon release from prison, to register his address with the Pennsylvania State Police (the "state police").  He was also obligated to notify the state police of all subsequent address changes for the remainder of his life.  Any failure to provide timely notification as required by law would constitute a criminal offense.

While subject to these obligations, Appellant moved to a new residence on April 1, 2009, and reported his new address to the state police on April 6.  Based on having

waited five days, Appellant was charged by information with the second-degree felony of failing to register as a sex offender under Section 4915(a)(1) of the Crimes Code, which was part of Megan's Law III. *See* 18 Pa.C.S. §4915(a)(1) (expired Dec. 20, 2012). When Megan's Law III was originally enacted in 2004, offenders were given ten days to report an address change to the state police. *See* Act of Nov. 24, 2004, P.L. 1243, No. 152 ("Act 2004-152"), at §8. However, a 2006 legislative change reduced that period to 48 hours. *See* Act of Nov. 29, 2006, P.L. 1567, No. 178, §7 ("Act 2006-178"). Thus, the 48-hour period was in effect when Appellant relocated on April 1, 2009. *See* 42 Pa.C.S. §9795.2(a)(2)(i) (expired Dec. 20, 2012).

In 2011, Appellant was convicted at a bench trial of failing to timely register his new address and sentenced to a term of imprisonment. After his direct appeal rights were restored *nunc pro tunc*, the Superior Court awarded a new trial due to the trial court's failure to conduct a jury-waiver colloquy. *See Commonwealth v. Derhammer*, No. 2057 MDA 2012, *slip op.*, 2014 WL 11017309 (Pa. Super. Jan. 7, 2014).

In the interim, Section 4915 of the Crimes Code expired and was replaced with Section 4915.1, as part of Megan's Law IV – more commonly known as the Sexual Offender Registration and Notification Act ("SORNA").[1] SORNA went into effect on December 20, 2012, and provided for the expiration of Megan's Law III at that time. *See* Act of Dec. 20, 2011, P.L. 446, No. 111, §§12, 18 (as amended 42 Pa.C.S. §§9799.10-9799.41). The following year, this Court announced its decision in *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013), finding that Act 2004-152 amounted to omnibus legislation in violation of the Constitution's single-subject rule.

---

[1] SORNA was enacted to bring Pennsylvania into compliance with the federal Adam Walsh Child Protection and Safety Act of 2006. *See* 42 Pa.C.S. §9799.10 (relating to the purposes of the subchapter). *See generally In re J.B.*, 630 Pa. 408, 412, 107 A.3d 1, 3 (2014).

*See* PA. CONST. art. III, §3 (generally prohibiting multi-subject bills). Thus, *Neiman* invalidated Act 2004-152 – which included Megan's Law III – in its entirety. *See Neiman*, 624 Pa. at 74, 84 A.3d at 615.

By way of further background, Pennsylvania first enacted Megan's Law in 1995. *See* Act of Oct. 24, 1995, P.L. 1079, No. 24 (Spec. Sess. No. 1) (as amended 42 Pa.C.S. §§9791-9799.6) ("Megan's Law I").[2] The General Assembly reposited Megan's Law in Title 42 of Pennsylvania's Consolidated Statutes at Subchapter H of the Sentencing Code. Megan's Law I was invalidated insofar as it pertained to the process for adjudicating an offender as a sexually violent predator. *See Commonwealth v. Williams*, 557 Pa. 285, 312-13 & n.18, 733 A.2d 593, 608 & n.18 (1999) ("Williams I"). The General Assembly then passed Megan's Law II, *see* Act of May 10, 2000, P.L. 74, No. 18 (as amended, 42 Pa.C.S. §§ 9791-9799.7), which cured the constitutional defect identified in *Williams I*. *See Commonwealth v. Williams*, 574 Pa. 487, 524-25, 832 A.2d 962, 984 (2003) ("Williams II").

Megan's Law II also provided, among other things, that offenders convicted of IDSI were subject to lifetime registration. *See* 42 Pa.C.S. §9795.1(b)(2) (2000). Such persons were given ten days to notify the state police of address changes. *See id.* §9795.2(a)(2) (2000). Any failure to make timely notification constituted a first-degree felony, subjecting the registrant to a mandatory minimum sentence of probation for life and to a discretionary sentence of up to life in prison. *Id.* §9795.2(d)(2) (2000).[3]

---

[2] Megan's Law governs, *inter alia*, the registration of sexual offenders and the designation of certain offenders as sexually violent predators. Nothing in the record suggests Appellant has ever been classified as a sexually violent predator. However, there is no dispute that he is a lifetime registrant under Megan's Law.

[3] This penalty provision was held to be unconstitutionally punitive relative to persons classified as sexually violent predators, as that status could be established without proof to a jury beyond a reasonable doubt. *See Williams II*, 574 Pa. at 526, 832 A.2d at 985.

Notably, the penalty provision was contained in the Sentencing Code together with the rest of Megan's Law II. Under Megan's Law III, however, it was moved to the Crimes Code.[4] The Sentencing Code provision was reduced to simply indicating that failure to register as required would subject the registrant to prosecution under the Crimes Code. *See* 42 Pa.C.S. §9795.2(d) (2004) (referring the reader to the newly-added 18 Pa.C.S. §4915). For its part, the Crimes Code provision added a scienter element, specifying that an individual subject to registration commits an offense if he "knowingly" fails to register with the state police as required. 18 Pa.C.S. §4915(a) (2004). In terms of grading for lifetime registrants, Section 4915 reflected that a first violation of the substantive offense would constitute a second-degree misdemeanor, a second violation would be a first-degree misdemeanor, and any subsequent violation would comprise a third-degree felony. *See id.* §4915(c)(1)-(3).[5]

As noted, Megan's Law III expired and was replaced by SORNA by the time *Neiman*'s holding was announced. While making substantive modifications to Megan's Law, SORNA also sought to continue in force the registration requirements in relation to Megan's Law III registrants. *See* 42 Pa.C.S. §9799.13(3) (2012). SORNA established a three-tiered system of classifying sexual offenses – Tier III being the most serious category, *see* 42 Pa.C.S. §9799.14(a) – and, as applied to Appellant, designated IDSI as a Tier III offense, *see id.* §9799.14(d)(4). This meant that Appellant's lifetime

---

[4] Megan's Law III did not completely repeal and replace Megan's Law II; rather, it made significant changes to Megan's Law II. *See Commonwealth v. Muniz*, ___ Pa. ___, ___, 164 A.3d 1189, 1197 (2017) (describing Megan's Law III has having "made . . . amendments to Megan's Law II").

[5] This grading scheme was altered two years later. *See* Act 2006-178, §3 (amending 18 Pa.C.S. §4915(c)).

registration period remained unchanged. *See id.* §9799.15(a)(3) (providing that Tier III offenders "shall register for the life of the individual").

However, *Neiman*'s broad invalidation of Act 2004-152 – which, again, included Megan's Law III in its entirety – would, without remedial legislation, call into question whether someone in Appellant's position would be an existing registrant as of SORNA's effective date. Thus, the *Neiman* Court stayed its decision for 90 days to allow for legislative action. In March 2014, shortly before the stay expired, the General Assembly enacted Act 19 of 2014, *see* Act of Mar. 14, 2014, No. 19, P.L. 41 ("Act 2014-19"), which modified the wording of Section 9799.13(3) to clarify that persons who were required to register with the state police at any time before SORNA's effective date, and whose registration period had not expired, were still obligated to register with the state police as provided in Section 9799.15 – in Appellant's case, for the remainder of his life.

As for Crimes Code Section 4915, although it had expired at the time of the *Neiman* decision, any application of its terms was potentially affected by *Neiman*'s invalidation of Act 2004-152, which, as noted, had created the provision. Nevertheless, Act 2014-19 did not re-enact Megan's Law III's penalty provision or amend its SORNA replacement, 18 Pa.C.S. §4915.1.[6]

In light of these developments, Appellant filed a motion to dismiss on the basis that, per *Neiman*, the Crimes Code provision under which he was charged was unconstitutional. The motion was denied in September 2014, and Appellant was found guilty at his retrial based on the record of his first trial. He was sentenced to four-to-eight years in prison. On appeal, he argued that his conviction was null and void since the crime of which he was found guilty was defined by an unconstitutional statute.

---

[6] SORNA retained the "knowingly" *mens rea* for the failure-to-register offense. As to lifetime registrants, it changed the grading to a second-degree felony for the first offense and a first-degree felony for subsequent offenses. *See* 18 Pa.C.S. §4915.1(a), (c).

A three-judge panel of the Superior Court affirmed in a published decision. *See Commonwealth v. Derhammer*, 134 A.3d 1066 (Pa. Super. 2016). Although it acknowledged that unconstitutional statutes are void *ab initio*, it stated that failing to timely register a new address had never been decriminalized, because SORNA enacted Crimes Code Section 4915.1 as a replacement for Section 4915. *See id.* at 1076-77. Still, the court noted, Appellant violated neither Megan's Law II, which gave an offender ten days to register, nor Section 4915.1, which gives an offender three business days. As to the latter provision, the court recognized that April 4 and 5 of 2009 were a weekend, meaning that April 6 was three business days after April 1. *See id.* at 1077.

The intermediate court instead focused its analysis on Act 2006-178, which it described as distinct from the unconstitutional Act 2004-152. The court developed that, despite a legislative intent to amend Megan's Law III, Act 2006-178 effectively modified Megan's Law II. The court relied for this position on *Commonwealth ex rel. Schnader v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793 (1933), which expressed that an amendatory enactment's validity does not depend on the constitutionality of the statute which it revises because "every word of the amended statute, including that quoted from the original statute, is the language of the Legislature which passed the amended act in those words." *Id.* at 194, 167 A. at 798, *quoted in Derhammer*, 134 A.3d at 1078. The Superior Court added that, in Act 2006-178, the General Assembly expressly stated that it sought to enact versions of Megan's Law and Jessica's Law in Pennsylvania. *See Derhammer*, 134 A.3d at 1078.[7] Thus, in the court's view, Megan's Law II, as amended by Act 2006-178, remained valid until SORNA went into effect.

---

[7] The court noted that "Jessica's Law is a reference to mandatory minimum sentences for sex offenders and is named after Jessica Lunsford, a child who was abducted, sexually assaulted and then murdered in Florida by a man who was previously convicted of a sex offense." *Id.* at 1078 n.12.

In terms of the particular statutory provisions at issue in this case, the Superior Court observed that: (1) the aspect of the Sentencing Code setting forth the maximum amount of time an offender had to report an address change, *see* 42 Pa.C.S. §9795.2(a)(2) (expired Dec. 20, 2012), was part of Megan's Law II and the time period was reduced by Act 2006-178 from ten days to 48 hours; (2) while Section 4915(a) of the Crimes Code was neither re-enacted nor amended by Act 2006-178, its content appeared in a similar form under Megan's Law II, albeit that the offense was graded as a first-degree felony and lacked a specific scienter element;[8] and (3) the penalty provision invalidated in *Williams II* could be "viewed as corrected" by Act 2006-178 "via its passage of 18 Pa.C.S. §4915(b) and (c)." *Derhammer*, 134 A.3d at 1079. Thus, the intermediate court concluded that Megan's Law II, as amended by Act 2006-178, "result[ed] in Appellant's felony of the second-degree conviction for failing to register as a sex offender being constitutionally and statutorily firm." *Id.*

Finally, the court observed that, in an unpublished decision, a different panel reached the opposite result based on *Ex parte Siebold*, 100 U.S. 371 (1880) (holding that a conviction under an unconstitutional statute is void). *See Commonwealth v. Myers*, No. 1295 MDA 2014, *slip op.*, 2015 WL 6128841 (Pa. Super. July 31, 2015). However, the court cited to its internal operating procedures which preclude parties from relying on its unpublished decisions. *See Derhammer*, 135 A.3d at 1073 & n.8.

---

[8] The intermediate court acknowledged that the criminal information stated Appellant "knowingly" failed to register, whereas Megan's Law II defined the offense without an express scienter element. It reasoned, however, that proof of a knowing *mens rea* satisfies the default standard as set forth in the Crimes Code. *See* 18 Pa.C.S. §302(c) (providing that, absent a specified *mens rea*, criminal liability requires intentional, knowing, or reckless conduct). Thus, the court concluded that there was "no issue with respect to a lack of notice of the elements of the crime charged that would have resulted in trial counsel being unable to pursue available defenses." *Derhammer*, 234 A.3d at 1079 n.13.

This Court granted further review to consider whether Appellant's conviction is void due to Megan's Law III having been invalidated by the *Neiman* decision. *See Commonwealth v. Derhammer*, ___ Pa. ___, 164 A.3d 474 (2016) (*per curiam*).

It is undisputed that a conviction based on an unconstitutional statute is a nullity. In *Siebold* the Supreme Court explained that an offense created by an unconstitutional law "is not a crime" and "[a] conviction under it . . . is illegal and void, and cannot be a legal cause of imprisonment." *Siebold*, 100 U.S. at 376-77. It follows that Appellant's conviction cannot be sustained to the extent it is based on Megan's Law III as enacted in 2004. The Commonwealth proffers two potential alternative bases to affirm the judgment of sentence.[9]

First, echoing a point made by the Superior Court, the Commonwealth argues that Act 2006-178, in retrospect, amended Megan's Law II rather than Megan's Law III. Thus, the Commonwealth indicates that Megan's Law II represents the legal foundation for Appellant's criminal liability and, as such, Appellant was "subject to being charged under 18 Pa.C.S. §4915.1(a)(3)." Brief for Commonwealth at 15.

The Commonwealth's advocacy on this point lacks substantial coherence. For one thing, Section 4915.1 was enacted by SORNA three years after the underlying events; it did not exist under Megan's Law II, and moreover, under SORNA the prior version of Megan's Law expired. Therefore, it is difficult to see how Appellant can be charged, pursuant to Megan's Law II, with violating Section 4915.1(a)(3).

Also, subsection (a)*(3)* relates to providing inaccurate information when reporting an address, whereas the criminal complaint and criminal information both alleged that Appellant failed to timely report his new address in violation of subsection (a)*(1).*

---

[9] For ease of discussion we have reversed the order of the Commonwealth's two arguments.

Likewise, the crux of the trial testimony for both the Commonwealth and the defense pertained to the question of whether Appellant's report, submitted on April 6, 2009, was timely: Appellant testified that he moved on April 5, whereas other witnesses stated he moved on April 1. *See, e.g.*, N.T., Mar. 3, 2011, at 22 ("Q: What was the basis for you filing that charge? A: He had moved from one residence to another and had exceeded the 48-hour mandated time to register his new address with the Pennsylvania State Police."). In this regard, the Commonwealth's brief appears to be based on facts other than those of the present case, as it suggests Appellant's criminal violation consisted of reporting inaccurate information in October 2012. *Compare* Brief for Commonwealth at 10 (suggesting that inaccuracies in the address provided by Appellant in October 2012 was the basis for the charge), *with Derhammer*, 134 A.3d at 1069 & n.5 (reciting the underlying events based on the April 6, 2009, report, and emphasizing that any error in the address as reported "was not the basis for the charge" against Appellant).

Assuming, *arguendo*, the Commonwealth intended to suggest Appellant could validly have been charged under Megan's Law II as amended by Act 2006-178 – without reference to Crimes Code Section 4915.1 – such a contention raises substantial difficulties. First, as Megan's Law III had not yet been declared unconstitutional, the 2006 legislation sought to amend Megan's Law III, not Megan's Law II. This circumstance is important because of the way Megan's Law III restructured the relevant penalty provision. As discussed, Act 2006-178 made revisions to the penalty section appearing in the Crimes Code, *i.e.*, 18 Pa.C.S. §4915, a statute that did not exist under Megan's Law II. It stated that "Section 4915(b) and (c) . . . are amended" in the manner indicated, and the amendments specifically referred to the consequences of violating Section 4915(a), *see* Act 2006-178, §3 – a provision that made untimely registration an offense – and turns out to have been void in light of the holding reached in *Neiman*.

Notably, as well, these amendments did not re-enact subsection 4915(a). Thus, even to the degree *Schnader* states that legislative amendments to invalidated provisions – here, Section 4915(b) and (c) – are effective as reenactments so long as the words of those provisions are repeated in the amending legislation, such principle is not directly apposite because Act 2006-178 did not repeat the words of subsection (a). While the Legislature clearly assumed that subsection (a) was still valid, this Court cannot insert the text of that subsection into the 2006 legislation by implication.

In this respect, *Schnader* itself concentrated on the specific "words" of the amendatory act. *See Schnader*, 312 Pa. at 194, 167 A. at 798 ("[E]very word of the amended statute, including that quoted from the original statute, is the language of the Legislature which passed the amended act in those words."). It follows that words which do not appear in the amending statute are not "the language of the Legislature which passed the amended act," and courts are not authorized to insert them by implication. *Cf. Burke ex rel. Burke v. Independence Blue Cross*, 628 Pa. 147, 159, 103 A.3d 1267, 1274 (2014) (explaining that courts cannot, under the guise of statutory construction, insert words into a statute even when it is clear and undisputed that the General Assembly intended to include those words); *Commonwealth v. Shafer*, 414 Pa. 613, 621, 202 A.2d 308, 312 (1964) (clarifying that it is improper for courts to supply omissions in legislative text, even where the omission resulted from inadvertence or lack of foresight by the Legislature). Hence, on April 6, 2009, when Appellant registered his new address, there was no text appearing in any valid aspect of the Crimes Code which made his conduct an offense.

We emphasize, as well, that Appellant was charged under Megan's Law III's penalty provision, not under its Megan's Law II counterpart, which appeared in the Sentencing Code, not the Crimes Code. *See generally Myers*, 2015 WL 6128841, at *6

(explaining that, even if Megan's Law II went back into effect when Megan's Law III was declared unconstitutional, "it is of no moment" because the defendant "was not charged under Megan's Law II, and the Commonwealth cites no authority for the proposition that a court can simply substitute one crime for another after conviction when the first crime was ruled unconstitutional" (emphasis omitted)), *quoted in* Brief for Appellant at 12. Indeed, the Commonwealth does not argue that the penalty clause contained in Megan's Law II, *see* 42 Pa.C.S. §9795.2(d)(2) (expired Dec. 20, 2012), should apply here.[10] Hence, nothing in Megan's Law II, or in any vestige of Megan's Law III which subsisted by virtue of the 2006 amending legislation, provides a valid foundation for the offense of which Appellant was, in fact, charged, and on which he was tried and sentenced.

This leaves only SORNA as a potential basis for the offense in question. Here, the Commonwealth maintains that Act 2014-19, which was passed in response to *Neiman*, "closes any 'gap' caused by the *Neiman* decision[.]" Brief for Commonwealth at 9. Under this theory, Appellant's obligation to timely report address changes was never negated since the act was passed before the expiration of the stay of *Neiman*'s ruling. The Commonwealth also emphasizes that Megan's Law III amended Megan's Law II but did not repeal it outright. Thus, the Commonwealth advances, Megan's Law II's registration requirements remained in effect after *Neiman*. Further, the

---

[10] We also note that Megan's Law II's penalty clause was different from that of Megan's Law III: it specified that lifetime registrants who failed to timely report their new address were subject to a mandatory minimum sentence of lifetime probation and to up to life imprisonment. *See* 42 Pa.C.S. §9795.2(d)(2) (2000). Therefore, any suggestion that Section 9795.2(d)(2) should retrospectively be viewed as the relevant penalty provision would be problematic. Appellant lacked any suggestion that he could be subject to such a lengthy sentence when he waived his right to be tried by a jury, and moreover, he had no reason to argue that *Williams II*'s invalidation of that provision relative to sexually violent predators, *see supra* note 3, should be extended to lifetime registrants.

Commonwealth references Rule of Criminal Procedure 560(C) for the position that a defect in the citation of a statute is not fatal to a criminal information. *See* Pa.R.Crim.P. 560(C) ("The information shall contain the official or customary citation of the statute and section thereof . . . that the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the information."). As such, the Commonwealth posits that Appellant was validly charged under Section 4915.1 of the Crimes Code, which was enacted by SORNA as a replacement for Section 4915. *See* Brief for Commonwealth at 14-16.[11]

We will assume, without deciding, that, as a result of the 2014 remedial legislation, Appellant was obligated to report any address changes during the relevant time period. The question is whether he could validly be punished for his specific conduct. If Section 4915(a) of the Crimes Code continued in effect until its expiration and replacement by Section 4915.1(a), the Commonwealth's argument might have some initial force. *See generally Derhammer*, 134 A.3d at 1076 (suggesting that, as long as the crime charged is substantially described in the statute referenced in the criminal information, a technical defect such as a citation to a criminal provision which has since been superseded by a similar one is "not necessarily dispositive"). As explained, however, in light of the invalidity of Act 2004-152 and the specific wording of Act 2006-178, there was no operative Section 4915(a) in the Crimes Code in April 2009.

Further, whatever initial strength the Commonwealth's position might otherwise have, it would ultimately be unavailing in light of the present facts. In *In re Dandridge*,

---

[11] Here again, the Commonwealth appears to proceed under the misapprehension that Appellant was charged with providing inaccurate information, rather than untimely information, to the state police. *See id.* at 15 (citing 18 Pa.C.S. §4915.1(a)(3) rather than (a)(1)). Therefore, we stress once more that Appellant was charged under subsection (a)(1) of Section 4915 and that the evidence adduced at trial centrally related to the timeliness of Appellant's address-change report.

462 Pa. 67, 337 A.2d 885 (1975), this Court referenced the Supreme Court's explanation that "[w]hen the legislature repeals a criminal statute *or otherwise removes the State's condemnation* from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct." *Dandridge*, 462 Pa. at 74, 337 A.2d at 888 (quoting *Bell v. Maryland*, 378 U.S. 226, 230, 84 S. Ct. 1814, 1817 (1964)) (emphasis added). Here, the condemnation was removed from Appellant's conduct when SORNA was enacted, as SORNA gave registrants three business days to report address changes – a requirement with which Appellant complied, as developed above. Although *Dandridge*'s pronouncement in this regard may have been *dicta*, it represents prevailing Pennsylvania law as established by the Superior Court, *see Commonwealth v. Bangs*, 259 Pa. Super. 68, 72, 393 A.2d 720, 722 (1978) (*en banc*), and the Commonwealth has not asked that the precept be revisited in the context of this appeal.

For the foregoing reasons, we hold that, at the time of Appellant's second trial and sentencing, the Commonwealth lacked authority to prosecute him for having waited until April 6, 2009, to report his April 1, 2009, address change. Therefore, the trial court should have granted his motion to dismiss.

Accordingly, the order of the Superior Court is reversed and the matter is remanded to the Court of Common Pleas to strike the judgment of sentence and dismiss the charge against Appellant.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.

Justice Mundy files a concurring opinion.