**[J-14-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 25 EAP 2019 |
| | : | |
| Appellee | : | |
| | : | |
| | : | Appeal from the Judgment of |
| v. | : | Superior Court entered on |
| | : | December 17, 2018 at No. 3698 |
| | : | EDA 2016, affirming the November |
| JEROME MCINTYRE, | : | 4, 2016 PCRA Order in the Court of |
| | : | Common Pleas, Philadelphia |
| Appellant | : | County, Criminal Division at No. CP- |
| | : | 51-CR-0009339-2010. |
| | : | |
| | : | |
| | : | SUBMITTED: January 31, 2020 |

**OPINION**

**JUSTICE TODD**                                                                  **FILED: June 16, 2020**

On April 1, 2020, our Court issued a *per curiam* order reversing the judgment of

sentence of Appellant Jerome McIntyre who had been convicted of violating 18 Pa.C.S.

§ 4915 (effective 1/1/2007-12/19/2011) ("Section 4915") for failing to register as a

convicted sex offender. *See Commonwealth v. McIntyre*, --- A.3d ---, 2020 WL 1546458

(Pa. filed April 1, 2020) (order). As explained more fully herein, Appellant's challenge to

his sentence was raised in proceedings under the Post Conviction Relief Act ("PCRA").[1]

Because we found his challenge to be meritorious, but because his prison sentence

---

[1] 42 Pa.C.S. §§ 9541-9546.

expired on April 7, 2020, thus terminating our jurisdiction to grant relief as of that date,[2] we took the unusual action of issuing our April 1, 2020 order, with an opinion to follow. We now set forth our reasons in support of that order.

## I. Facts and Procedural History

Appellant was convicted of indecent assault in 2001. Pursuant to "Megan's Law II"[3] as then in effect, Appellant was required to register for 10 years as a sex offender with the Pennsylvania State Police upon his release from prison in 2003. Subsequently, in 2004, the legislature enacted "Megan's Law III,"[4] a provision of which made it a crime to fail to register. *See* 18 Pa.C.S. § 4915 (effective 1/24/05 to 12/31/06). Later, in 2005, Appellant was charged under this statute with not fulfilling this mandatory registration requirement. He pled guilty, and he was sentenced to a year of probation.

In 2010, Appellant was (again) charged with failing to register, under the version of Section 4915 then in effect, which is the version of that provision at issue herein.[5] In April 2012, following a jury trial, Appellant was convicted and received a mandatory sentence of 5 to 10 years incarceration. As noted, this sentence expired on April 7, 2020.[6]

---

[2] *See Commonwealth v. Ahlborn*, 699 A.2d 718 (Pa. 1997) (PCRA precludes granting relief to a petitioner who is no longer serving a sentence of imprisonment, probation, or parole); 42 Pa.C.S. § 9543(a)(1).

[3] Act of May 10, 2000, P.L. 74, No. 18.

[4] Act of Nov. 24, 2004, P.L. 1243, No. 152, effective January 24, 2005.

[5] The initial version of Section 4915 which became effective, along with the remainder of Megan's Law III, on January 24, 2005, and the version in effect in 2010 at the time Appellant was charged with the instant offense, differed from the original version only in that the later version increased the grading of a first offense from a second-degree misdemeanor to a third-degree felony, and, for a second offense, as here, from a third-degree felony to a second-degree felony.

[6] In December 2011, the General Assembly enacted the "Sex Offender Registration and Notification Act" ("SORNA"), Act of Dec. 20, 2011, P.L. 446, No. 111, § 12, December 20, 2012. SORNA repealed 18 Pa.C.S. § 4915, and replaced it with 18 Pa.C.S. § 4915.1.

Appellant, through appointed counsel, filed a direct appeal, and the Superior Court affirmed his judgment of sentence on July 16, 2013. *Commonwealth v. McIntyre*, 2009 EDA 2012 (Pa. Super. filed July 16, 2013). Appellant did not seek further review with our Court of the Superior Court's decision. On December 16, 2013, we handed down our decision in *Commonwealth v. Neiman*, 84 A.3d 603 (Pa. 2013), in which we held that Megan's Law III, which included Section 4915, was unconstitutional in its entirety as it was passed in violation of the single subject rule of the Pennsylvania Constitution.

Appellant next filed a *pro se* PCRA petition on April 22, 2014, asserting his innocence of his underlying conviction for indecent assault, and also raising several claims of ineffective assistance of counsel. Counsel was appointed for him, but was subsequently removed. Substitute counsel did not file an amended PCRA petition, but, rather, a motion to withdraw and a "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

The trial court, by order issued in November 2016, granted counsel's motion and dismissed Appellant's PCRA petition. Appellant, again proceeding *pro se,* filed a timely notice of appeal of this order, and, thereafter, filed a Pa.R.A.P. 1925(b) statement raising over 30 claims of PCRA court error.

No further action was taken in this matter until October 10, 2017, when Appellant filed, *pro se*, an amended PCRA petition in which he asserted that his sentence for violating Section 4915 was illegal as a result of our Court's July 19, 2017 decision in

---

Section 4915.1, which has been subsequently reenacted by the Act of June 12, 2018, P.L. 140, No 29, § 1, is not at issue in this appeal.

*Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (holding that retroactive application of SORNA's registration provisions violated the *ex post facto* clauses of the Pennsylvania and United States Constitutions).[7]

The trial court issued a Rule 1925(a) opinion in which it summarily rejected the claims which Appellant raised in his Rule 1925(b) statement. In his *pro se* brief filed with the Superior Court, Appellant argued that *Muniz*, and also our Court's 2017 decision in *Commonwealth v. Derhammer*, 173 A.3d 723 (Pa. 2017) (holding that the Commonwealth lacked authority to prosecute a defendant for violating Section 4915 after Megan's Law III was struck down by *Neiman*), changed the law such that his "conviction in whole and in part cannot be sustained." Appellant's Brief in *Commonwealth v. McIntyre*, 3698 EDA 2016 (Pa. Super.), at 9.

The Superior Court affirmed the denial of PCRA relief. *Commonwealth v. McIntyre*, 3698 EDA 2016 (Pa. Super. filed Dec. 17, 2018). In its unpublished memorandum opinion, the court considered Appellant's claims based on *Muniz* and *Derhammer* – even though he did not raise the applicability of these cases in his original PCRA petition – because, in its view, these claims concerned the legality of Appellant's sentence, which it concluded it had jurisdiction to consider. The court first determined that *Muniz* did not apply to Appellant's case because Appellant was convicted under Megan's Law III, not SORNA. Regarding *Derhammer*, the court opined that that case was distinguishable since the defendant therein was prosecuted after our Court's decision in *Neiman*, whereas Appellant's judgment of sentence became final *before Neiman* was

---

[7] The trial court took no action on this amended petition.

issued, and Appellant did not argue that *Neiman* applied retroactively to invalidate his conviction.

Appellant filed a *pro se* petition for allowance of appeal to this Court, raising the following three issues:

> 1. Whether the Superior Court erred by failing to apply the standard delineated in *Teague v. Lane* (1989) and its progeny, including and specifically *Montgomery v. Louisiana* (2016), allowing a retroactive application in collateral proceedings for new substantive rules, as it is United States Supreme Court precedent?
>
> 2. Whether a complete and fundamental miscarriage of justice issued fatally depriving Appellant of his constitutional rights to due process under the United States and Pennsylvania Constitutions where the court of original jurisdiction lacked subject matter jurisdiction to prosecute in this instant case?
>
> 3. Whether *Commonwealth v. Neiman* and/or *Commonwealth v. Derhammer*, both Pennsylvania Supreme Court precedents, are to be applied to his first timely PCRA as new substantive rules in accord with the United States and Pennsylvania Constitutions?

*Commonwealth v. McIntyre*, 217 A.3d 792, 792-93 (Pa. 2019) (order).

Our Court granted this petition on September 4, 2019, and we referred the matter to our Court's *pro bono* coordinator to select volunteer counsel to represent Appellant in this appeal. Attorneys Bruce P. Merenstein and Brandy S. Ringer entered their appearance on behalf of Appellant, and filed a brief on his behalf, along with an unopposed motion for expedited consideration in light of the looming expiration of Appellant's sentence. The Commonwealth, by the Philadelphia District Attorney's Office, also filed a brief in which, as explained below, it concurs with Appellant that his sentence for violating Section 4915 was illegal and subject to reversal.

After this briefing process was complete, our review, as discussed below, indicated that Appellant was entitled to reversal of his judgment of sentence; however, because the expiration of Appellant's sentence was rapidly approaching, at which point our Court would be deprived of jurisdiction to grant relief,[8] we issued a *per curiam* order on April 1, 2020, reversing his judgment of sentence and indicating that the present opinion would be forthcoming. *See Commonwealth v. McIntyre*, --- A.3d ---, 2020 WL 1546458 (Pa. filed April 1, 2020) (order).

## II. Arguments of the Parties

Appellant first argues that, after our Court's decision in *Neiman*, Section 4915 became null and void dating back to its inception, and, thus, it was as if this statute never existed. Consequently, he maintains that it would violate due process to uphold his conviction and to permit his incarceration thereunder. Appellant highlights that our Court has recognized the principle that a statute which is stricken for constitutional infirmity must be regarded as void *ab initio* and treated as if it never existed. *See* Appellant's Brief at 11 (citing *Glen-Gery Corporation v. Zoning Hearing Board*, 907 A.2d 1033, 1037 (Pa. 2006) (holding that a facially untimely challenge to a zoning statute based on a claim that the manner of the statute's enactment violated due process must be allowed to proceed, as the constitutional claim, if proven, would render the statute void *ab initio*)). Appellant asserts that, in *Derhammer*, our Court acted in accordance with this principle by recognizing that Section 4915 was rendered void *ab initio* as the result of our Court's ruling in *Neiman* that Megan's Law III was unconstitutionally enacted. *See id.* at 12-13 (quoting *Derhammer*, 173 A.3d at 728 ("a conviction based on an unconstitutional statute

---

[8] *See supra* note 2.

is a nullity[;] . . . an offense created by an unconstitutional law 'is not a crime' and 'a conviction under it is illegal and void, and cannot be a legal cause of imprisonment.'" (in turn quoting *Ex Parte Siebold*, 100 U.S. 371, 376-77 (1879))))). Likewise, Appellant reasons that his conviction for allegedly violating Section 4915 "is a nullity. [It] is illegal and void, and cannot be a legal cause of imprisonment." *Id.* at 13 (internal quotation marks omitted).

Appellant further argues that, as a general matter, the Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a state from convicting an individual "for conduct that its criminal statute, as properly interpreted, does not prohibit." Appellant's Brief at 13 (quoting *Fiore v. White*, 531 U.S. 225, 228-29 (2001) (*per curiam*) (holding that this Court's interpretation of a criminal statute as precluding criminal culpability for the offense of which petitioner was convicted, handed down after petitioner's conviction became final, did not constitute a new rule of law, but rather effectively stated the law at the time of petitioner's conviction; thus, petitioner's conviction and continued incarceration violated due process)). Appellant proffers that, if a conviction based on conduct not prohibited by a criminal statute violates due process, then it necessarily follows that a conviction for violating a criminal statute which does not exist must also violate due process, inasmuch as there is no more fundamental principle of justice than that "an individual should not be convicted and sentenced for violating a non-existent statute." *Id.* at 15.

Additionally, Appellant highlights that the PCRA entitled him to relief from his conviction and sentence because the fact that his conviction was void *ab initio* meets several of the criteria for PCRA relief enumerated in 42 Pa.C.S. § 9543(a)(2): his

conviction constituted a violation of his constitutional guarantee of due process, warranting relief under Section 9543(a)(2)(i) (conviction or sentence resulted from a violation of the Pennsylvania and United States Constitutions); his conviction resulted in an unlawful sentence, necessitating relief under Section 9543(a)(2)(vii) (sentence is greater than the lawful maximum) inasmuch as there is no lawful sentence for violation of a nonexistent statute, and, thus, *any* sentence of incarceration is greater than allowed by law; and his conviction warranted relief under Section 9543(a)(2)(viii) (a proceeding in a tribunal without jurisdiction), given that the non-existence of Section 4915 deprived the court of common pleas of jurisdiction to try him for that offense.

Appellant finally argues that, were our Court to apply the framework utilized by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality),[9] we would apply our *Neiman* decision to cases, like Appellant's, on collateral review. In that regard, Appellant contends that *Neiman* merely applied settled rules of constitutional interpretation that existed for over 150 years. Hence, as expressing an established constitutional rule of criminal procedure, in Appellant's view, *Neiman* should be applied retroactively under *Teague*. Appellant maintains that, even were we to consider *Neiman*

---

[9] *Teague* was a plurality decision with respect to the proper standard to apply in determining whether a decision of the high Court should be given retroactive effect in federal *habeas corpus* proceedings challenging criminal convictions. Yet, a majority of the high Court has subsequently adopted its pronouncement that a new constitutional rule of criminal procedure does not apply, as a general matter, to federal collateral review of convictions. By contrast, new substantive rules of constitutional law – *i.e.*, "rules forbidding criminal punishment of certain primary conduct" – as well as "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense," *Montgomery v. Louisiana*, 136 S.Ct. 718, 728 (2016), must be given retroactive effect. Likewise, new rules of criminal procedure which are considered "watershed rules" that implicate "the fundamental fairness and accuracy of the criminal proceeding" will also be retroactively applied in federal collateral challenges to criminal convictions. *Welch v. United States*, 136 S.Ct. 1257, 1264 (2016).

to have established a substantive change in the law, given that it altered the range of criminally proscribed conduct by eliminating the offense which Appellant was charged with committing, *Teague* requires its retroactive application to his case.

The Commonwealth responds that it believes, "in the interest of justice, [the] defendant could not have been convicted of a criminal offense that was enacted through unconstitutional legislation." Commonwealth's Brief at 11. The Commonwealth points out that our Court in *Neiman* determined that all of Megan's Law III, which includes Section 4915, was passed in violation of the single subject rule of the Pennsylvania Constitution, and that our Court has subsequently concluded in *Derhammer*, albeit in what it characterizes as *dicta*, that the violation of the single subject rule resulted in Megan's Law III (and thus Section 4915) being void *ab initio*. The Commonwealth acknowledges that *Derhammer* involved a direct appeal; however, the Commonwealth considers "the refusal to retroactively apply those decisions in post-conviction review cases, like the instant one, where a defendant's judgment of sentence has become final, would create an inequitable and unacceptable result," with "some defendants remaining convicted of violating a non-existent criminal statute, while others are not." *Id.* at 11.

In the Commonwealth's view, though, affording relief in this case is complicated by the fact that Appellant did not include this claim in his PCRA petition, arguably resulting in waiver for purposes of appellate review. The Commonwealth posits that, nevertheless, our Court should treat Appellant's claim for retroactive application of *Neiman* and *Derhammer* as a claim which implicates the legality of Appellant's sentence, given that it is in the genus of claims involving a trial court's lack of constitutional or statutory authority to impose a sentence. Commonwealth's Brief at 26-27 (quoting *Commonwealth v.*

*Foster*, 17 A.3d 332, 344 (Pa. 2011) (plurality) (legality of sentence is implicated when "a sentencing court's inherent, discretionary authority to wield its statutorily prescribed powers is supplanted, abrogated, or otherwise limited, or the legislature's intent in fashioning a sentence has been potentially misapplied" (citation omitted)). The Commonwealth considers Appellant's claim to fall within this "catch-all" category of legality of sentence claims given that, "if there was no authority to enact the criminal statute that defendant was convicted under, then there was no legal authority for *any* sentence to be imposed in this case." *Id.* at 26-27 (emphasis original).

Thus, the Commonwealth agrees Appellant should be granted relief "because there does not appear to be any authority in Pennsylvania that would provide that a defendant can be lawfully incarcerated for breaking a law that was rendered unconstitutional due to the manner in which it was improperly enacted." *Id.* at 29. The Commonwealth declares that it "cannot advocate for the incarceration of a person for breaking a law that has been struck down as unconstitutional." *Id.*[10]

---

[10] The Commonwealth disputes Appellant's claim that *retroactive* application of *Neiman* and *Derhammer* is implicated by *Teague*, inasmuch as the analysis articulated in *Teague* is implicated only when a state court is considering whether to give retroactive application to a new rule of *federal law* interpreting the United States Constitution, and, in any event, *Neiman* and *Derhammer* did not articulate a new rule of constitutional law. At most, from the Commonwealth's perspective, *Neiman* involved a procedural rule, in that it was concerned with the process the legislature used in enacting the statute; therefore, it was not a watershed rule implicating retroactive application. The Commonwealth also rejects Appellant's claim that the trial court lacked jurisdiction to adjudicate his guilt and impose a sentence, because the trial court was empowered statutorily to hear criminal cases of this nature, and offers that Appellant is actually arguing that the trial court lacked the power to try Appellant and impose his sentence. The Commonwealth considers such a claim to be waivable. Commonwealth's Brief at 25 (citing *In re Melograne*, 812 A.2d 1164 (Pa. 2002) (explaining the difference between a claim that a court lacked subject matter jurisdiction, which is nonwaivable, and a claim that a court lacked power to take a particular action, which can be waived)).

## III. Analysis

Appellant claims that he is entitled to relief because our Court's decision in *Neiman* – striking down Megan's Law III due to its unconstitutional enactment – rendered Section 4915 void *ab initio*, and his conviction (and sentence) based thereon invalid. Before addressing the merits of this claim, however, we must address its preservation for our review.

Initially, as recounted above, both parties characterize the nature of Appellant's claim as a challenge to the legality of his sentence. Our own independent analysis has confirmed this characterization.[11]

In *Commonwealth v. Barnes*, 151 A.3d 121 (Pa. 2016), our Court considered the question of whether the defendant's challenge to a mandatory minimum sentence imposed before such sentences were later deemed to be unconstitutional by the United States Supreme Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), was preserved for direct appellate review, notwithstanding the fact that the defendant failed to raise the challenge in the proceedings below. Relying on the lead opinion in *Foster*, *supra*,[12] the defendant contended that our Court could consider his claim because it implicated the legality of his sentence, due to the fact that the trial court lacked authority to enter the sentence which it did. Our Court accepted this argument, and held that, because the sentencing provision in question was later ruled by our Court to be unconstitutional, "it is

---

[11] Because the issues involved in this appeal present pure questions of law, our review is plenary. *Commonwealth v. Parrish*, 224 A.3d 682, 699 (Pa. 2020).

[12] In *Foster*, the lead opinion authored by Justice Baer, and joined by this author and Justice McCaffery, concluded that a challenge to a sentencing court's authority to impose a mandatory minimum sentence, under an unconstitutional mandatory minimum sentencing statute, implicated the legality of sentence and was not waivable. *Foster*, 17 A.3d at 344-45.

as if that statutory authority never existed." *Barnes*, 151 A.3d at 127. Hence, we reasoned that, because the sentencing statute was "void on its face," and the trial court possessed no other legal authority to enter the imposed sentence, the defendant was entitled to challenge the legality of his sentence, regardless of the fact that he did not preserve the issue prior to seeking direct appellate review with our Court. *Id.*

Likewise, Appellant's assertion that the statute under which he was convicted was void *ab initio* because it was passed in an unconstitutional fashion necessarily implicates the trial court's authority to impose a sentence of incarceration for that conviction, given that a trial court is not empowered under our Commonwealth's Sentencing Code to sentence an individual for a non-existent criminal offense. We, therefore, conclude that Appellant's claim is one which implicates the legality of his sentence. *See Commonwealth v. Monarch*, 200 A.3d 51 (Pa. 2019) (defendant's claim that trial court lacked legal authority to impose mandatory minimum sentence for his DUI conviction, because Pennsylvania's mandatory minimum sentencing statute was invalidated as unconstitutional by the decision of the United States Supreme Court in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), implicated the legality of his sentence); *see also Commonwealth v. Spruill*, 80 A.3d 453, 464 (Pa. 2013) (Saylor, J., concurring) ("Since a conviction is the essential supporting infrastructure for a sentence, . . . 'illegality' with respect to the former extends to the latter as well. The alternative is for courts to accept as legal a sentence which is grounded upon an illegal conviction." (citation omitted)).

Moreover, the PCRA specifically permits the courts of our Commonwealth to grant relief from an illegal sentence. *See* 42 Pa.C.S. § 9542 ("This subchapter provides for an action by which persons . . . serving illegal sentences may obtain collateral relief."). Thus,

in *Commonwealth v. DiMatteo*, 177 A.3d 182 (Pa. 2018), our Court found that the defendant's assertion – that the trial court lacked the authority to impose his mandatory minimum sentence because the mandatory sentencing statute under which the sentence was imposed was rendered unconstitutional by *Alleyne* – should be treated as a claim involving the legality of sentence under *Barnes*; as a result, it was cognizable under the PCRA and could be raised in a timely filed PCRA petition. Inasmuch as Appellant's claim that the trial court lacked authority to sentence him because the statute under which he was convicted was void *ab initio* is also, under *Barnes*, a claim involving the legality of his sentence, it too is cognizable under the PCRA. *See generally Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999) ("legality of sentence is always subject to review within the PCRA," provided the PCRA's time limits for filing a petition thereunder, or one of its exceptions, are satisfied).[13]

However, as the Commonwealth highlights, Appellant did not include this legality of sentence claim in his *pro se* PCRA petition, nor did his appointed counsel file an amended PCRA petition presenting this issue to the PCRA court. These procedural facts, in the Commonwealth's view, implicate a question of waiver.

As a general matter, under the PCRA, an issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544; *Commonwealth v. Mason*, 130 A.3d 601, 674 (Pa. 2015). In the case at bar, Appellant could not have raised the issue of whether *Nieman* and *Derhammer* rendered his conviction void *ab initio* at trial or

---

[13] It is undisputed that Appellant's *pro se* PCRA petition was timely filed within one year of his judgment of sentence becoming final.

on direct appeal, as *Nieman* was not issued by our Court until five months after his conviction was affirmed by the Superior Court (and *Derhammer* was issued years after that); thus, textually, the PCRA does not require waiver on this basis.

Appellant first raised his challenge to the legality of his sentence in his appeal to the Superior Court from the denial of his PCRA petition – in his *pro se* brief – after appointed counsel had been permitted to withdraw. In that brief, he argued that our Court's decisions in *Neiman* and *Derhammer* changed the law such that his "conviction in whole and in part can not be sustained." Appellant's Brief in *Commonwealth v. McIntyre*, 3698 EDA 2016 (Pa. Super.), at 9. For the following reasons, we conclude that, due to the unique nature of Appellant's legality of sentence claim – founded, as it is, on the claim that his conviction under Section 4915 was void *ab initio* – we may presently address it, even though it was first raised on appeal from the denial of PCRA relief.[14]

As our Court has previously explicated, the void *ab initio* doctrine is rooted in a judicial imperative to protect individual constitutional rights, such as the right of due process, against transgression by coordinate branches of government:

> Under this theory, a statute held unconstitutional is considered void in its entirety and inoperative as if it had no existence from the time of its enactment. The origin of this doctrine may lie in the early case of *Marbury v. Madison*[, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)], in which Chief Justice

---

[14] Neither *Barnes* nor *DiMatteo* directly addresses this question, given that both cases arrived at our Court in a different procedural posture than the case at bar — *Barnes* involved a direct appeal from a judgment of sentence, and *DiMatteo* involved an appeal from a PCRA petition in which the legality of sentence had been raised in the PCRA petition. Moreover, prior to both decisions, our Court had previously held in *Commonwealth v. Washington*, 142 A.3d 810 (Pa. 2016), that, under the *Teague* framework, the high Court's ruling in *Alleyne* – which was the focus in *Barnes* and *DiMatteo* – was not entitled to retroactive application to cases pending on collateral review, and that, as a result, the defendant's sentence in that case was not rendered illegal by *Alleyne*.

> Marshall wrote that "a law repugnant to the constitution is void."
>
> Oliver P. Field, the most noted scholar on this issue has suggested that the void *ab initio* theory is premised on the historical American concern over excessive authority asserted by a tyrannical executive or legislative branch in violation of the rights of individuals protected by the Constitution. Field explains that whereas the Constitution prohibits the legislature and executive from overstepping their limits, the courts came to regard themselves as the ultimate guardians of individual rights. Any act that invaded these rights was to be judged unconstitutional and treated as though it never existed.

*Glen-Gery*, 907 A.2d at 1037 (quoting Erica Frohman Plave, *The Phenomenon of Antique Laws: Can a State Revive Old Abortion Laws in a New Era?,* 58 Geo. Wash. L.Rev. 111 (1990)).

Thus, in *Glen-Gery*, following these precepts, our Court ruled that a claim alleging that a zoning ordinance was passed in a manner that deprived landowners of their due process rights to notice and an opportunity to be heard could be brought outside the time period allowed for bringing such challenges under the Municipalities Planning Code enacted by the General Assembly. We reasoned that such a challenge could not be dismissed as time-barred by legislative fiat, because, if the constitutional claim were proven, the zoning ordinance would be *void ab initio* and, thus, judicially unenforceable. *Glen-Gery*, 907 A.2d 1044-45.

This void *ab initio* principle has been applied in the realm of criminal proceedings by the United States Supreme Court in the seminal case of *Ex Parte Siebold, supra*. This case established, as a fundamental principle of our system of jurisprudence, that an unconstitutional law cannot serve as the foundation of a court's authority to try and imprison an individual, and, thus, criminal convictions and sentences based upon such unconstitutional laws must not be permitted to stand. The high Court declared therein

that "[a]n unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." *Ex parte Siebold*, 100 U.S. at 376–77.

Appellant's void *ab initio* claim therefore implicates all phases of the criminal proceedings against him, dating to their beginning, and seeks to have them declared null and void, as, in his view, judicial enforcement of his incarceration under an unconstitutionally enacted statute would result in a denial of his most basic due process right — that of liberty. This claim does not, therefore, involve the more typical question, such as that which our Court confronted in *Washington*, *see supra* note 14, of whether a judicial decision declaring a species of sentence to be unconstitutional should be given retroactive effect on collateral review. Indeed, this question does not involve retroactivity at all, given that, as Appellant develops in his brief to our Court, his claim is, at its core, an assertion that his conviction and resulting sentence are, and in effect always were, illegal under Pennsylvania law. *See, e.g., Fiore*, 531 U.S. at 228 (where our Court's interpretation of a criminal statute rendered after the defendant was convicted "was the law of Pennsylvania - as properly interpreted - at the time of [defendant's] conviction. [Thus] this case presents no issue of retroactivity."); *cf. Kendrick v. District Attorney of Philadelphia County*, 916 A.2d 529, 539 (Pa. 2007) ("[a] person does not run afoul of Pennsylvania criminal law unless he violates a specific statute;" our Court's construction of a criminal statute as not proscribing certain conduct reflects the scope of the statute at the time of its enactment).

Consequently, given that this case involves an assertion of an illegal sentence due to a void *ab initio* conviction, we conclude that Appellant is entitled to judicial review of his

unique *Derhammer*-based claim, even though it was raised for the first time in his appeal from the denial of his PCRA petition.

Turning to the merits of Appellant's claim, our Court in *Neiman* declared Megan's Law III, of which Section 4915 was a part, to be unconstitutionally enacted – a determination that it was void from the date it purported to take effect. Our Court acknowledged this fact in *Derhammer*, wherein we ruled that the Commonwealth was barred from prosecuting a defendant under Section 4915 following *Neiman*:

> It is undisputed that a conviction based on an unconstitutional statute is a nullity. In *[Ex Parte] Siebold* the Supreme Court explained that an offense created by an unconstitutional law "is not a crime" and "[a] conviction under it . . . is illegal and void, and cannot be a legal cause of imprisonment." *Siebold*, 100 U.S. at 376-77. It follows that [a]ppellant's conviction cannot be sustained to the extent it is based on Megan's Law III as enacted in 2004.

*Derhammer*, 173 A.3d at 728.

Likewise, Appellant's conviction and sentence cannot stand, even though pre-dating our *Neiman* decision, because his conviction was likewise based on Section 4915, which, after *Neiman*, must be regarded as void from the time of its enactment. *Accord Commonwealth v. Wolfe*, 140 A.3d 651, 661 (Pa. 2016) ("[A] sentence based on an unconstitutional statute that is incapable of severance is void."). Indeed, to permit Appellant's conviction and sentence to stand would, as he contends, and the Commonwealth concurs, violate principles of due process, inasmuch as there was no validly-enacted criminal statute on which the Commonwealth could base Appellant's conviction. *Cf. Fiore* (a criminal conviction offends due process whenever the Commonwealth has failed to prove any element of a criminal offense beyond a

reasonable doubt). Appellant was, therefore, entitled to reversal of his sentence and discharge from his conviction.

On this basis, we entered our *per curiam* order of April 1, 2020, reversing Appellant's judgment of sentence.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty, Wecht and Mundy join the opinion.